H. Baker KURRUS, Individually, and On Behalf of Arkansans
to Protect Police, Libraries, Education, and Services (APPLES),
Petitioner *v.* Sharon PRIEST, Secretary of State, *Respondent*;
Oscar Stilley, Individually, and On Behalf of
Arkansas Taxpayers Rights Committee, *Intervenor*

00-1071 29 S.W.3d 669

Supreme Court of Arkansas
Opinion delivered October 24, 2000
[Petition for rehearing denied November 2, 2000.]

*Friday, Eldredge & Clark*, by: *Elizabeth Robben Murray*, *R. Christopher Lawson*, and *Tamara G. Ward*, for petitioner.

*Tim Humphries*, General Counsel; and *Mark Pryor*, Att'y Gen., by: *Dennis R. Hansen*, Ass't Att'y Gen., for respondent.

*Oscar Stilley*, for intervenor.

DONALD L. CORBIN, Justice, delivered the opinion of the court with respect to Point I, in which ARNOLD, C.J.,

and THORNTON, J., joined. BROWN, J., concurs. GLAZE, J., dissents, and IMBER and SMITH, JJ., dissent separately.

TOM GLAZE, Justice, delivered the opinion of the court with respect to Point II, in which ARNOLD, C.J., CORBIN and THORNTON, JJ., joined. BROWN, IMBER, and SMITH, JJ., dissent.

This is an original action petition, filed pursuant to Amendment 7 of the Arkansas Constitution and Ark. Sup. Ct. R. 6-5(a), challenging the sufficiency of a proposed constitutional amendment. Petitioner, H. Baker Kurrus, individually, and on behalf of Arkansans to Protect Police, Libraries, Education, and Services (APPLES), asks this court to declare that the popular name and ballot title of proposed Amendment 4 are insufficient and that, if enacted by the voters, the amendment would be constitutionally invalid. Petitioner also seeks an injunction restraining Respondent, Arkansas Secretary of State Sharon Priest, from placing the proposed amendment on the ballot for the November 7, 2000 general election. We allowed the intervention of Oscar Stilley, individually, and on behalf of Arkansas Taxpayers Rights Committee, the sponsor of proposed Amendment 4.

On September 1, 2000, Respondent certified as sufficient the popular name and ballot title of proposed Amendment 4. As certified by Respondent and the Arkansas Attorney General, the popular name of the proposed amendment is as follows:

> AN AMENDMENT TO ABOLISH THE STATE AND LOCAL SALES AND USE TAX ON USED GOODS, TO PROHIBIT THE INCREASE OF TAXES WITHOUT VOTER APPROVAL AT A GENERAL ELECTION, TO PROVIDE FOR A THREE YEAR STATUTE OF LIMITATIONS FOR ACTIONS TO RECOVER TAXES, BY THE TAXING AUTHORITY OR BY AN AGGRIEVED TAXPAYER, TO PROVIDE PROCEDURAL SAFEGUARDS FOR TAXPAYERS, AND FOR OTHER PURPOSES

The complete text of the ballot title, as certified by Respondent and the Arkansas Attorney General, is appended to this opinion. Relevant portions of the ballot title are reproduced as needed in our discussion below. Petitioner filed this original action September 18, 2000. We granted Petitioner's motion to expedite the case on September 21, 2000, and heard oral argument on October 12, 2000.

Petitioner raises the following challenges to proposed Amendment 4: (1) the ballot title is too long and complex and organized

in a way that misleads voters; (2) the ballot title and popular name are misleading and do not reveal to the voters the scope and import of the changes proposed by the measure; and (3) the ballot title and the popular name are impermissibly tinged with partisan coloring. Additionally, Petitioner contends that the proposed amendment, if approved by a majority of the voters, would violate the United States and Arkansas Constitutions by impairing the obligation of contracts. *See* Ark. Const. art. 2, § 17, and U.S. Const. art. 1, § 10. We find merit to Petitioner's arguments and therefore grant the petition.

■ Before we discuss the meritorious claims, we must address Intervenor's argument that we should review the ballot title and popular name of this proposed amendment under the "manifest fraud" standard set out in *Becker v. Riviere*, 277 Ark. 252, 641 S.W.2d 2 (1982). That standard is used to review proposed constitutional amendments submitted by the General Assembly under Article 19, § 22. This standard is admittedly different than that used to review proposed amendments submitted by the people under Amendment 7. This court recently rejected the invitation to apply one uniform standard to all proposed amendments. *See Thiel v. Priest*, 342 Ark. 292, 28 S.W.3d 296 (2000). Accordingly, for the reasons stated in *Thiel*, we reject Intervenor's argument on this point.

## I. Sufficiency of the Ballot Title and Popular Name

■■ The standard for reviewing the ballot title and popular name of proposed initiatives under Amendment 7 is well settled. A ballot title must include an impartial summary of the proposed amendment that will give voters a fair understanding of the issues presented and of the scope and significance of the proposed changes in the law. *Parker v. Priest*, 326 Ark. 123, 930 S.W.2d 322 (1996). It must be free from misleading tendencies that, whether by amplification, omission, or fallacy, thwart a fair understanding of the issues presented. *Id.* It cannot omit material information that would give the voter serious ground for reflection. *Id.* While it is not required that the ballot title contain a synopsis of the amendment, it is required that the title be complete enough to convey an intelligible idea of the scope and import of the proposed law. *Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 376 (2000) (citing *Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952)). This court has recognized the impossibility of preparing a ballot title that would please everyone. *Id.* Thus, the ultimate issue is whether the voter, while inside the

voting booth, is able to reach an intelligent and informed decision for or against the proposal and understands the consequences of his or her vote based on the ballot title. *Id.* The party challenging the ballot title has the burden of proving that it is misleading or insufficient. *Parker v. Priest*, 326 Ark. 386, 931 S.W.2d 108 (1996).

Unlike the ballot title, the popular name of a proposed constitutional amendment is primarily a useful legislative device that need not contain the same detailed information or include exceptions that might be required of a ballot title. *Parker*, 326 Ark. 123, 930 S.W.2d 322. Its purpose is to identify the proposal for discussion prior to the election. *Roberts*, 341 Ark. 813, 20 S.W.3d 376; *Arkansas Women's Political Caucus v. Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). The popular name is not held to the same stringent standards and need not be as explicit as a ballot title; however, it cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal. *Id.* We consider the popular name along with the ballot title in determining its sufficiency. *Parker*, 326 Ark. 123, 930 S.W.2d 322. With these standards in mind, we consider Petitioner's challenges to the proposed amendment's ballot title and popular name.

Petitioner argues that the ballot title, which contains 592 words, is too long and complex and is organized in such a way that it misleads the voters. Petitioner acknowledges that the length of the ballot title is not, in itself, a determinative factor. *See, e.g., Crochet v. Priest*, 326 Ark. 338, 931 S.W.2d 128 (1996); *Parker*, 326 Ark. 123, 930 S.W.2d 322; *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994). He argues, however, that the length of this ballot title combined with the way in which it is organized effectively results in the concealment of the more controversial aspects of the proposal. He argues that the ballot title focuses the voter's attention on the more-popular initial provision, which would abolish the sales and use tax on used goods, while hiding the more controversial and less publicized issues in the middle and near the end of the ballot title. According to Petitioner, the more controversial issues are (1) the provision prohibiting any increase or imposition of tax without the approval of a majority of the electorate in a statewide general election; (2) an expanded and confusing legal definition of "tax increase"; (3) a restricted definition of "illegal exaction"; (4) the abolition of the common-law rule against recovery back of voluntary payment of taxes; (5) the creation of a three-year statute of limitations in tax recovery actions brought by citizens or taxing authorities; and (6) the removal of some traditional defenses afforded the state in tax actions.

The first part of the ballot title reflects:

AN AMENDMENT TO THE ARKANSAS CONSTITUTION ABOLISHING THE STATE AND LOCAL SALES AND USE TAX ON USED GOODS; AUTHORIZING THE COLLEC-TION OF SALES AND USE TAX ON GOODS USED TO MAKE REMANUFACTURED GOODS, BUT NOT ON THE SALE PRICE OR MARKET VALUE OF THE REMANUFACTURED GOODS; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PRE-VENT THE IMPOSITION OF SALES AND USE TAX UPON OTHERWISE TAXABLE GOODS, OR THE SALE OR USE OF SAME, WHICH HAVE NOT BEEN PREVIOUSLY SUB-JECT TO ANY SALES OR USE TAX BY ANY GOVERN-MENT ENTITY; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PROHIBIT THE COL-LECTION OF TAXES FOR WHICH LIABILITY ACCRUED PRIOR TO THE EFFECTIVE DATE OF THIS AMEND-MENT; PROHIBITING THE IMPOSITION OR INCREASE OF ANY TAX, OR THE DIVERSION OF ANY FUEL TAXES OR OTHER REVENUE SOURCES PRESENTLY USED FOR ROAD OR BRIDGE CONSTRUCTION OR MAINTENANCE TO OTHER PURPOSES, WITHOUT THE APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS, OF THE STATE OR THE AFFECTED LOCAL GOVERNMENTAL ENTITY, FREELY VOTING AT THEIR ABSOLUTE UNFETTERED DISCRETION UPON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING THAT THE REDUCTION OR ELIMINATION OF EXEMPTIONS OR CREDITS, OR THE CHANGING OF ANY LAW OR RULE WHICH RESULTS IN THE COLLECTION OF ADDITIONAL REVENUE FROM SOME OR ALL TAXPAYERS, SHALL BE DEEMED A TAX INCREASE TO THE EXTENT THAT SAID LAW RESULTS IN INCREASED TAX OR EXACTION[.]

Petitioner contends that the ballot title does not convey to the voter the scope or import of the proposed measure, namely that it would completely change the means of generating revenue currently used by the state and local government entities. The voter must sift through 113 words before this change is mentioned. Even then, Petitioner, argues, the ballot title fails to inform the voter of the gravity and significance of this change.

Respondent and Intervenor do not contest the fact that the proposed amendment would affect sweeping changes beyond the abolishment of the sales and use tax on used goods. They argue,

however, that this larger impact is clearly revealed to the voters in the ballot title. We disagree.

■ ■ The ballot title does not inform the voter of the far-reaching consequences of voting for this measure. For example, the voter is not sufficiently informed that immediately upon the amendment's approval, all revenues collected from sales and use tax on used goods will cease, and the government entities that depend on those revenues will not be able to make up for the losses until the next "regularly scheduled statewide election." Likewise, the voter is not informed as to what "regularly scheduled statewide election" means. Does it mean a statewide election called in a regularly scheduled manner, or does it refer to the general elections held every other November? This uncertainty is compounded by the fact that the popular name does not use this term at all, but rather, it reflects the term "general election." If the term used in the popular name is accurate, then those government entities that are adversely affected by the loss of revenues from the abolished sales and use tax on used goods will not be able to attempt to recoup those losses for two full years. The voter should be informed that by approving this measure, he or she may risk losing valuable government services during that time. This information is so significant and material that it would give the voter serious ground for reflection. *See Bailey v. McCuen*, 318 Ark. 277, 884 S.W.2d 938 (1994). Its omission thus renders the ballot title insufficient. This court has long recognized that the "ballot title must accurately reflect the general purposes and fundamental provisions of the proposed initiative, *so that an elector does not vote for a proposal based on its description in the ballot title, when, in fact, the vote is for a position he might oppose.*" *Gaines v. McCuen*, 296 Ark. 513, 519, 758 S.W.2d 403, 406 (1988) (emphasis added) (citing *Coleman v. Sherrill*, 189 Ark. 843, 75 S.W.2d 248 (1934)).

■ Similarly, the ballot title does not sufficiently inform the voter as to what constitutes a "tax increase" and thus triggers the provision requiring voter approval at a regularly scheduled statewide election. The ballot title provides that "the reduction or elimination of exemptions or credits, or the changing of any law or rule which results in the collection of additional revenue from some or all taxpayers, shall be deemed a tax increase to the extent that said law results in increased tax or exaction[.]" This definition appears to cover any law or rule that results in the collection of additional revenue from some or all taxpayers. Thus, fees that are ordinarily thought of as revenues, such as those collected for drivers' licenses, hunting permits, and vehicle tags, would be encompassed within

that definition. Accordingly, the proposed amendment would prohibit any increase in those fees without the approval of a majority of the voters in the affected area.

Intervenor contends that such fees would not require such a popular vote before they could be increased, because the ballot title provides that only the collection of additional revenue that results in increased tax shall be deemed a tax increase. He asserts that there are legal differences between the terms "tax" and "fee." Thus, according to Intervenor, only a law or rule that results in increased tax will be deemed a tax increase. That notion, however, is not clearly conveyed in the ballot title or in the text of the amendment itself. In this respect, both the ballot title and the amendment are misleading. The voter should not have to be well versed in legal interpretation in order to decipher what is meant in a proposed constitutional amendment. Placing the voter in a position of either having to be an expert in the subject of taxation or having to guess as to the effect his or her vote would have is impermissible. *See Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). This is precisely the dire straits in which the voter is placed by the uncertain language contained in this measure.

Furthermore, not only is the ballot title unclear as to whether fees and other types of revenue are encompassed by the proposed amendment, it is equally unclear whether the amendment pertains to all types of *taxes* and taxing authorities. The ballot title prohibits "the imposition or increase of any tax ... without the approval of a majority of the qualified electors, of the state or the affected local governmental entity[.]" This provision would appear to encompass the imposition or increase of *any* tax levied by *any* taxing authority. The amendment, however, only purports to prohibit the General Assembly or "any city, county, or town" from imposing or increasing any tax without the approval of a majority of the qualified electors therein. It is thus not clear that the amendment's prohibition would extend, for example, to taxes imposed by school districts, whereas the ballot title would cover those taxing entities. We are not persuaded by Respondent's and Intervenor's contention that school districts are implicitly covered by the amendment's reference to taxes imposed by counties. The voter should not have to resort to legal rules of statutory construction to determine what is meant by a proposed measure. The voters are entitled to a ballot title that is honest, impartial, and intelligible and will give them a fair understanding of the issues presented. *Parker*, 326 Ark. 123, 930 S.W.2d 322. It is axiomatic that the majority of voters will derive their information about a proposed measure from

an inspection of the ballot title immediately before casting their votes. *Christian Civic Action Comm.*, 318 Ark. 241, 884 S.W.2d 605. The ballot title in this case does not honestly and accurately reflect what is contained in the proposed amendment.

█ In sum, we conclude that the ballot title of proposed Amendment 4, considered along with its popular name, is insufficient. It is misleading, both by amplification and omission, and thwarts a fair understanding of the issues presented. It also fails to convey to the voter the scope and import of the proposed measure.

## II. Impairment of Contracts

█ Petitioner's remaining argument is that the proposed amendment will violate the constitutional guarantee against impairment of contracts, and for that reason, should be struck from the ballot. Our court has held that it would review a proposal's validity *if* the measure is "clearly contrary to law." *Donovan v. Priest*, 326 Ark. 353, 359, 931 S.W.2d 119, 121 (1996), *cert. denied*, 117 S. Ct. 1081 (1997) (quoting *Plugge v. McCuen*, 310 Ark. 654, 660, 841 S.W.2d 139, 142 (1992)). Here, the crucial threshold issue is whether the proposed amendment as written clearly conflicts with Article 2, § 17, of the Arkansas Constitution and Article 1, § 10, of the United States Constitution, both of which prohibit the passage of any "law impairing the obligation of contracts." If it does, the proposal should not be submitted to the electorate, because the present and ripe question to decide is whether the measure's proponents are entitled to invoke the direct legislation process at all. *Donovan*, 326 Ark 353, 931 S.W.2d 119.

It is stipulated by the parties that Petitioner is the holder of a City of Brinkley Sales and Use Tax Bond, which is secured by collections of the sales and use tax levied by the city. The bond is one of a Series 2000 Bonds, and matures on March 1, 2017. The City of Brinkley *has covenanted that the sales and use tax will be levied and collected until the 2000 bonds are paid in full,* and it further covenanted that excess collections of the sales and use tax will be used to redeem the 2000 bonds prior to maturity.

After stipulating to the foregoing facts, the proponent of the proposed measure, Intervenor Oscar Stilley, offered no stipulations or proof of his own. Instead, he merely argues in his brief that Petitioner did not attempt to show a bona fide impairment of the obligation of contracts. Intervenor further claims Petitioner has

failed to show that his bond will not be paid off well ahead of time, with or without the passage of the proposal; nor, he says, did Petitioner explain how the bondholders might be prejudiced by a reduction in the tax base.

Intervenor is seriously mistaken. Section 5 of the amendment provides it will take effect immediately upon passage. When that occurs, that portion of the revenues from the sales and use taxes on used goods indisputably will no longer be available for the payment of the City of Brinkley bonds. Thus, under the terms of the proposed amendment, an impairment clearly arises under the stipulated facts in this case because the City of Brinkley covenanted that its bonds would be payable from and secured by a pledge of sales and use taxes upon *all* goods. Significantly, the proposed amendment's terms fail to provide a substituted source of revenue that would replace these abolished sales and use taxes on used goods. If the proposal had contained such a provision and assurance, any impairment caused by the loss of sales and use taxes could have been precluded. *See Beaumont v. Faubus*, 239 Ark. 801, 394 S.W.2d 478 (1965) (holding that bondholders' payment does not always have to be made from particular fund or source and real obligation, from standpoint of impairment of contractual considerations in case of bond issue; change involving substitution of security which does not diminish prospects of, or adversely interfere with, expected payment does not constitute impairment of contract). Besides the proposed measure not having provided for a substituted revenue or security source to replace the taxes lost from used goods, there is no existing statutory procedure in place by which the bond payments could be made. Our court has also held that, where collateral which has been pledged to secure the repayment of bonds is removed, then the obligation of the contract between the bondholder and the bond issuer has been impaired. *See Bacon v. Road Imp. Dist. No. 1*, 157 Ark. 309, 248 S.W. 267 (1923). As decided in *Donovan*, 326 Ark. 353, 931 S.W.2d 119, where there is a justiciable issue that reflects that the proposed measure is clearly contrary to law, the measure's proponents are not entitled to invoke the direct legislation process at all.

Utilizing Petitioner's Official Statement pertaining to the City of Brinkley Sales and Use Tax Bonds Series 2000, Intervenor relies on the following language from the section pertaining to Debt Service Coverage:

> Actual Tax receipts collected by the City will depend upon, among other things, the level of retail activity within the City, the eco-

nomic health of the City and surrounding trade area, possible future actions by the people of the State or General Assembly of the State defining transactions subject to the Tax and granting exemptions from the Tax, such as exemptions for food sales. The figure set forth below is only an estimate and there can be no assurance that actual Tax receipts will equal the estimate shown below. See THE TAX, *Future Tax Receipts*.

Based upon the pledge of 100% of estimated Tax receipts, debt service coverage is as follows:

| | |
|---|---|
| Estimated Tax Receipts Available for Debt Service | $584,284 |
| Maximum Annual Debt Service | 369,525 |
| Debt Service | 1.58 x |

██ ██ Intervenor contends that the foregoing information shows that the purchasers of the Brinkley bonds were made aware that there may be a possibility of a reduction in the tax base. While that is true, the above language speaks in terms of the people of the State or the General Assembly *defining transactions* or *granting exemptions* that might reduce tax revenues. There is no suggestion in the above statement which indicates an entire source of the sales and use tax revenues might be abolished and no longer available to secure the bond indebtedness. As mentioned above, the proposed measure abolishes a portion of Arkansas's sales and use tax which can no longer be used, as the City of Brinkley covenanted, to secure and to pay its bonds. This is an impermissible impairment of contract clearly contrary to the Arkansas and United States Constitutions. Thus, in our view, the proposed measure should be removed from the November 7, 2000 ballot or the votes cast for or against it should not be counted.

In conclusion, we note that in conference the justices thoroughly addressed the point regarding whether this court could reach the impairment-of-contract issue. Citing, *Plugge*, 310 Ark. 654, 841 S.W.2d 139, Justice Robert L. Brown now opines in his dissent that any ruling on the impairment question would be advisory in nature until the proposed measure is adopted. He asserts that this is the reason that the *Plugge* court declined to reach the constitutionality of the proposal in issue there. He also cites *Donovan*, 326 Ark. 353, 931 S.W.2d 119, and submits that neither *Plugge* nor *Donovan* provides authority for this court to consider a substan-

tive constitutional challenge to the proposal. This is simply not true.

In our recent decision in *Stilley v. Henson*, 342 Ark. 346, 28 S.W.3d 274 (2000), we addressed this issue. There we said the following:

> Before we can reach the merits of Mr. Stilley's point on appeal, we must first determine whether this pre-election challenge to the validity of the proposed ordinance presents an issue that is ripe for adjudication. In *Plugge v. McCuen*, 310 Ark. 654, 841 S.W.2d 139 (1992), we declined to decide a constitutional challenge to a proposed constitutional amendment before the election had occurred on the ground that this court cannot issue advisory opinions. We distinguished our earlier holding in *Czech v. Baer*, 283 Ark. 457, 677 S.W.2d 833 (1984), that the legal validity of a proposed measure may be considered and decided even before the election, by noting that the proposed measure in *Czech v. Baer* was "clearly contrary to law and should not have been submitted to the electorate," whereas the proposed measure in *Plugge v. McCuen* was not so clear. *Plugge v. McCuen*, 310 Ark. at 660, 841 S.W.2d at 142. More recently, in *Donovan v. Priest*, 326 Ark. 353, 931 S.W.2d 119 (1996), we clarified our precedent on the issue of whether we will entertain a challenge to the legal validity of such measures prior to an election. We stated:
>
>> It has been said that the pertinent issue in cases such as this one "is *not* the hypothetical question of whether the law, if passed, would be constitutionally defective; rather, it is the present and ripe question whether the measure's proponents are entitled to invoke the direct legislation process at all."
>
> *Id.*, 326 Ark. at 359, 931 S.W.2d at 121. Thus, we held that we could review the question of whether a measure's proponents are entitled to invoke the direct initiative process in the first place.

*Id.* at 351, 28 S.W.3d at 277 (emphasis added).

If we took the position, as suggested by some, that we could never consider the constitutional validity of an Amendment 7 initiative proposal prior to an election, this court would have to overrule precedent nearly ninety years old, *see Hodges v. Dawdy*, 104 Ark. 583, 149 S.W. 656 (1912), and as recent as October 12, 2000 — *Stilley*, 342 Ark. 346, 28 S.W.3d 274. This court in *Plugge*, 310 Ark. 654, 841 S.W.2d 139, fully recognized the controlling case law that authorizes this court to review the constitutional validity of a proposed amendment under Amendment 7, but chose not to rule on the constitutional issue there because it could not say the proposal clearly contravened the Qualification Clauses of the United

States Constitution. Moreover, the *Plugge* court *specifically declined to reach the proposal's constitutionality because the record before the court was confusing and because the parties had failed to provide a complete, understandable abstract of record.* In fact, the parties even failed to include a copy of the proposed amendment.

 Again, for the reasons already discussed above on this point, we hold the proposed amendment is clearly in conflict with both the Arkansas and United States Constitutions. Unlike the situation in *Plugge*, the parties, including the Attorney General and counsel for the proponents of the proposed measure, have submitted sufficient stipulations, exhibits, and a record, along with citations of legal authority they argue in support of the constitutional issue of impairment of contract before us. We have no basis to decline reaching the proposed measure's constitutionality, and only additional problems are certain to ensue if the court side-steps deciding this issue now.

 Accordingly, we grant the petition and enjoin Respondent from placing proposed Amendment 4 on the ballot. Alternatively, we order that any votes cast on such proposal not be counted or certified. We further shorten the time for issuance of the mandate and direct that any petition for rehearing must be filed within five days from the date that this opinion is issued.

*ADDENDUM*

*BALLOT TITLE*

AN AMENDMENT TO THE ARKANSAS CONSTITUTION ABOLISHING THE STATE AND LOCAL SALES AND USE TAX ON USED GOODS; AUTHORIZING THE COLLECTION OF SALES AND USE TAX ON GOODS USED TO MAKE REMANUFACTURED GOODS, BUT NOT ON THE SALE PRICE OR MARKET VALUE OF THE REMANUFACTURED GOODS; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PREVENT THE IMPOSITION OF SALES AND USE TAX UPON OTHERWISE TAXABLE GOODS, OR THE SALE OR USE OF SAME, WHICH HAVE NOT BEEN PREVIOUSLY SUBJECT TO ANY SALES OR USE TAX BY ANY GOVERNMENT ENTITY; PROVIDING THAT THIS AMENDMENT SHALL NOT BE CONSTRUED TO PROHIBIT THE COLLECTION OF TAXES FOR WHICH LIABILITY ACCRUED PRIOR TO THE EFFECTIVE DATE OF THIS AMEND-

MENT; PROHIBITING THE IMPOSITION OR INCREASE OF ANY TAX, OR THE DIVERSION OF ANY FUEL TAXES OR OTHER REVENUE SOURCES PRESENTLY USED FOR ROAD OR BRIDGE CONSTRUCTION OR MAINTENANCE TO OTHER PURPOSES, WITHOUT THE APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS, OF THE STATE OR THE AFFECTED LOCAL GOVERNMENTAL ENTITY, FREELY VOTING AT THEIR ABSOLUTE UNFETTERED DISCRETION UPON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING THAT THE REDUCTION OR ELIMINATION OF EXEMPTIONS OR CREDITS, OR THE CHANGING OF ANY LAW OR RULE WHICH RESULTS IN THE COLLECTION OF ADDITIONAL REVENUE FROM SOME OR ALL TAXPAYERS, SHALL BE DEEMED A TAX INCREASE TO THE EXTENT THAT SAID LAW RESULTS IN INCREASED TAX OR EXACTION; PROVIDING THAT THE TERM "MAJORITY OF THE QUALIFIED ELECTORS," AS USED IN THIS AMENDMENT, MEANS A MAJORITY OF THE QUALIFIED ELECTORS WHO ACTUALLY APPEAR AND VOTE UPON THE PERTINENT QUESTION; ABOLISHING THE RULE AGAINST RECOVERY BACK OF VOLUNTARY PAYMENTS, AS APPLIED TO ILLEGAL EXACTIONS; PROVIDING FOR A THREE (3) YEAR STATUTE OF LIMITATIONS FOR THE CITIZENS' RECOVERY BACK OF ILLEGAL EXACTIONS, AND FOR A THREE (3) YEAR STATUTE OF LIMITATIONS ON ALL CIVIL, CRIMINAL, OR OTHER ACTIONS BY ANY STATE OR LOCAL GOVERNMENT TO COLLECT DELINQUENT TAXES; PROVIDING THAT IN ANY ILLEGAL EXACTION LAWSUIT, ALL PERSONS SIMILARLY SITUATED TO THE NAMED PLAINTIFF SHALL BE ENTITLED TO RECOVER BACK ANY SUMS FOUND TO HAVE BEEN ILLEGALLY EXACTED, LESS COSTS AND REASONABLE ATTORNEY'S FEES, UPON SUCH CONDITIONS AS THE COURT MAY FIND JUST; EXPANDING THE DEFINITION OF ILLEGAL EXACTION TO INCLUDE NOT ONLY ILLEGAL IMPOSITION, LEVYING, ASSESSMENT, OR COLLECTION OF TAX OR ENFORCED GOVERNMENTAL OR QUASI GOVERNMENTAL EXACTIONS, BUT ALSO ERRONEOUS OR EXCESSIVE IMPOSITION, LEVYING, ASSESSMENT, OR COLLECTION OF TAX OR ENFORCED GOVERNMENTAL OR QUASI GOVERNMENTAL EXACTIONS OF ANY KIND WHATSOEVER, PROVIDED, HOWEVER, THAT SUCH SHALL NOT INCLUDE ANY LEGAL TAX IF THE TAXING AUTHORITY REASONABLY ATTEMPTED TO COMPLY WITH ALL LAWS, REGULATIONS, AND REQUIRE-

MENTS FOR THE ASSESSMENT OR COLLECTION OF TAX, AND THE CIRCUMSTANCES ARE SUCH THAT THE TAXPAYERS IN FAIRNESS AND EQUITY OUGHT NOT TO ESCAPE LIABILITY FOR THE TAX; PROVIDING THAT SOVEREIGN IMMUNITY, FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, FAILURE TO APPROPRI-ATE MONEY FOR REPAYMENT, OR PAYMENT OVER TO ANOTHER ENTITY, CONSTITUTE NO DEFENSES TO AN ACTION FOR ILLEGAL EXACTION; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT IMMEDIATELY, EXCEPT AS OTHERWISE PROVIDED; PROVIDING THAT ALL PROTECTIONS FOR THE TAXPAYER, RELATED TO LITIGATION, SHALL APPLY TO ALL ACTIONS BROUGHT TO JUDGMENT AFTER THE DATE OF PASSAGE OF THIS AMENDMENT, EXCEPT AS TO ACTIONS IN WHICH A NEW TRIAL WOULD BE REQUIRED IN ORDER TO DETERMINE FACTS ESSENTIAL TO THE JUDGMENT, OR ACTIONS IN WHICH THE JUDGMENT WAS ALREADY FINAL ON THE DATE OF THE PASSAGE OF THIS AMENDMENT; AND FOR OTHER PURPOSES.

ROBERT L. BROWN, Justice, concurring on Point I; dissenting on Point II. I agree with the majority that the ballot title *and* the proposed amendment are misleading in the extreme. Nothing less is at stake here than the total restructuring of how *all revenue* is raised in this state for spending at all levels of government. That point, however, is obfuscated by the drafting of the proposal. The ballot title *and* the amendment speak throughout in terms of *taxes*. However, an "increase in taxes" is defined so broadly that any revenue increase falls within that definition. Witness the language from the ballot title: "Providing that...the changing of any law or rule which results in the collection of additional revenue from some or all taxpayers, shall be deemed a tax increase to the extent that said law results in increased tax or exaction." Thus, collection of additional revenue defines an "increased tax." So while the voting public believes it is approving a mechanism, first, to remove the sales tax on used goods, and, second, for voter approval of sales, income, and property taxes, in actuality school millages, special improvement district assessments, hunting fees, park fees, zoo fees, and any other revenue increase would be subject to voter approval. In short, all revenue increases, regardless of how big or small, will not be able to go into effect until the people

approve them every two years at a General Election. This measure, as a result, completely revamps the revenue-raising component of government, especially at the local level. The intervenor, Oscar Stilley, denies this, but at the very least the full ramifications of the proposed initiative are obscure and murky.

This court has repeatedly held that the central question in resolving ballot title issues is whether the voter is able to reach an intelligent and informed decision and to understand the consequences of his or her vote. *See, e.g., Roberts v. Priest*, 341 Ark. 813, 20 S.W.3d 371 (2000); *Christian Civic Action Comm. v. McCuen*, 318 Ark. 241, 884 S.W.2d 605 (1994). At the same time, we have held that it is not this court's function to interpret a proposed amendment or discuss its merits or faults. *Ferstl v. McCuen*, 296 Ark. 504, 758 S.W.2d 398 (1998). And we have made it clear that the voters of this state, within constitutional limits, have the right to change any law or provision of our state constitution. *Dust v. Riviere*, 277 Ark. 1, 638 S.W.2d 663 (1982). But in *Dust*, we also said:

> If the voter knows the extent and import of such a proposal, it is the voter's decision, not ours, as to the wisdom of the proposal. But at the same time the voters have placed on this court the duty and responsibility to see that when they vote that change, or decline to vote that change...they are allowed to make an intelligent choice, *fully aware of the consequences* of their vote.

*Dust v. Riviere*, 277 Ark. at 4, 638 S.W.2d at 665 (emphasis added).

The dissent concludes that a ballot title cannot be misleading if it accurately reflects a misleading amendment. Hence, according to the dissent's reasoning, if a ballot title correctly describes a misleading or even fraudulent proposed amendment, we should disregard that and let the measure go to a vote of the people. I could not disagree more.

Again, the central role of this court is to assure that the voters are fully aware of the consequences of their vote. How can we perform our duty if the amendment itself deceives or misleads the people about what is at issue? The answer is obvious. We cannot. This is not a question of taking a position on the merits of the proposed amendment or interpreting how it will be implemented. It is a question of being forthright with the voters and assuring them that they are not in danger of buying a "pig in a poke." This is especially true when the primary focus of Amendment 4 initially is on the abolishment of taxes on used goods and not on restructuring our entire system of raising revenue. While it is not the role of

this court to delve into the wisdom of the proposal, it is certainly our role to analyze whether the drafters of the measure have employed subtleties and sugarcoated language to sway the voters. *See Bradley v. Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952).

Accordingly, I agree to strike this proposal from the ballot. It would have been any easy matter to provide an amendment that allowed for voter approval of sales, income, and property taxes. Amendment 4 does not speak with such clarity.

At the same time, I cannot agree with the majority that the question under the Arkansas Constitution and U.S. Constitution of whether bonds will be impaired due to the repeal of the sales and use tax on used goods is ripe for our review. We do not know at this stage whether Amendment 4 will be adopted. Any opinion by this court prior to adoption would be purely advisory in nature. We so held in *Plugge v. McCuen*, 310 Ark. 654, 841 S.W.2d 137 (1992), and declined to reach the issue of whether the proposed term limits law violated the Qualifications Clause of the U.S. Constitution prior to the amendment's adoption. We reiterated this principle in *Donovan v. Priest*, 326 Ark. 353, 931 S.W.2d 119 (1996), but held that we would address the issue of whether candidates who "disregarded voter instruction on term limits" could be identified as such on the ballot. In *Donovan*, the issue we addressed was whether the proposed measure came within the scope of Amendment 7, not a substantive constitutional challenge to the proposal. We said:

> In so holding, we do not conclude that we will entertain substantive constitutional challenges to a proposed measure, such as whether it violates the free speech provision of the First Amendment, before an election has been held. We distinguish such substantive constitutional challenges from procedural challenges in that the former necessarily involve fact-specific issues and thus are not ripe for review until the proposed measure becomes law and a case in controversy arises. Given that the review we are asked to conduct in this case is not one of direct review of the proposed amendment's validity, but rather one of whether the proposed amendment's advocates are entitled to invoke our initiative process in the first place, we will address the merits of Petitioner's challenge.

*Donovan*, 326 Ark. at 360-361, 931 S.W.2d at 122. In short, the *Donovan* case is not authority for considering a constitutional challenge before election. It is just the opposite.

Contrary to the majority protestations on this point, we are changing the law significantly. That is what the complainant asked

us to do – to overrule *Plugge v. McCuen, supra*, and begin addressing constitutional issues before elections. I would not change our law regarding constitutional challenges before an election.

There are other reasons why we should not address the impairment-of-contracts issue before the election. All we have before us at this time is one bond from the City of Brinkley secured by the sales and use tax levied by the city. Based on what this court presently has before it, we can only speculate on the impact of Amendment 4 on this bond, should it pass.

Second, striking Amendment 4 on feared impairment-of-contract grounds at this time would be dangerous precedent. Henceforth, all an opponent to a proposed reduction in taxes would have to do is present a bond secured in part by those taxes, and we would feel constrained to strike the measure from the ballot. I am not willing to go that far before an election.

Third, if we begin deciding constitutional issues regarding a proposed initiative before election, does this mean failure to raise those issues at that time forecloses a challenge after the election? Or can a complainant raise constitutional challenges both before and after the election? If we hold that constitutional challenges must be mounted before an election or lost, we foreclose our ability to consider the separation-of-powers issue that might be raised in the future regarding Proposed Initiated Act No. 1 (Tobacco Settlement Proceeds Act). *See Walker v. Priest*, 342 Ark. 410, 29 S.W.3d 657 (2000) (Brown, J., concurring).

I would not change our law about advisory opinions for this case. But, again, I agree to strike the measure from the ballot because of misleading tendencies.

A NNABELLE CLINTON IMBER, justice, dissenting. For the first time in this court's history, a proposed constitutional amendment is being struck from the ballot because a majority believes the proposed amendment itself does not speak clearly. I must respectfully dissent.

As we have stated frequently and consistently, our function in reviewing the sufficiency of the popular name and ballot title for a proposed constitutional amendment is to "see that the popular name and ballot title are a fair and honest means of presenting this measure to the people for their consideration." *Ferstl v. McCuen*, 296 Ark. 504, 510, 758 S.W.2d 398, 401 (1988). It is not our function to interpret the amendment or to discuss the proposal's

merits or its faults. *Id.* A ballot title is sufficient if it recites the general purposes of the proposed amendment and contains enough information to sufficiently advise electors of the true contents of the proposed amendment. *Newton v. Hall,* 196 Ark. 929, 120 S.W.2d 364 (1938); *Lewis v. Hall,* 196 Ark. 45, 116 S.W.2d 353 (1938). Under these controlling principles, we simply determine whether the popular name and ballot title fairly and accurately reflect the contents of the proposed amendment. When these principles are faithfully applied in the present litigation, I believe that the popular name and ballot title of proposed Amendment 4 are sufficient and I would deny the injunction.

In concluding that the ballot title is "misleading, both by amplification and omission," and "also fails to convey to the voter the scope and import of the proposed measure," the majority opinion with respect to Point I actually takes issue with the proposed amendment itself. For example, the majority opinion questions what is meant by the phrase "regularly scheduled statewide election" that appears in the text of the amendment and in the ballot title. The majority opinion also questions the amendment's definition of what will constitute a "tax increase" for purposes of triggering the provision requiring voter approval at regularly scheduled statewide elections. In short, the majority simply believes that the language contained in this measure is unclear. Indeed, I may agree with the majority and exercise my right to vote against the measure. However, our function in reviewing the sufficiency of the popular name and ballot title is not to find fault with the text of the proposed amendment; rather, our function is to determine whether the content of the proposed amendment is accurately reflected in the popular name and ballot title. Once again, I cannot find this ballot title to be clearly deficient under the well-established principles that have governed this court's decisions regarding the sufficiency of ballot titles since Amendment 7 was adopted in 1920.

The majority opinion with respect to Point II addresses the constitutional validity of the proposed amendment prior to the amendment's adoption. In doing so, the majority ignores, and *subsilentio* overrules, this court's recent holding in *Donovan v. Priest,* 326 Ark. 353, 931 S.W.2d 119 (1996), in which we clarified our precedent on the issue of whether we will entertain a challenge to the legal validity of a proposed measure prior to an election:

> It has been said that the pertinent issue in cases such as this one "is *not* the hypothetical question of whether the law, if passed, would be constitutionally defective; rather, it is the present and ripe

question whether the measure's proponents are entitled to invoke the direct legislation process at all."

*Id.*, 326 Ark. at 359, 931 S.W.2d at 121.

In *Donovan v. Priest, supra,* we noted that this court had previously reviewed and decided the validity of proposed local initiatives in two cases: *Czech v. Baer,* 283 Ark. 457, 677 S.W.2d 833 (1984) and *Hodges v. Dowdy,* 104 Ark. 583, 149 S.W. 656 (1912). In both of those cases, this court determined whether a proposed local initiative was subject to the initiative power of the people. Specifically, we held in *Hodges v. Dowdy, supra,* that a prior initiative and referendum provision of the Arkansas Constitution did not confer power on the voters of a municipality or county, apart from the other people of the State, to initiate any kind of legislation. Furthermore, we held that the powers conferred by the legislature in an Enabling Act was to initiate local measures which "are not inconsistent with the general laws of the State." *Id.,* 104 Ark. at 599, 149 S.W. at 661. Similarly, in *Czech v. Baer, supra,* we noted that the Initiative and Referendum Amendment itself provides that "no local legislation shall be enacted contrary to the Constitution or any general law of the State." *Id.,* 283 Ark. at 461, 677 S.W.2d at 835. We have just recently invalidated a proposed local initiative because it was contrary to specific enactment procedures mandated by the legislature for levying or repealing a countywide sales and use tax. *Stilley v. Henson,* 342 Ark. 346, 28 S.W.3d 274 (2000). In doing so, we concluded that we could entertain a challenge to the legal validity of the proposed local initiative prior to the election pursuant to the rules laid down in *Donovan v. Priest, supra.* The issue in *Stilley v. Henson* was whether the measure's proponents were entitled to invoke the direct initiative process. *Id.*

The complainant here contends that the proposed amendment, if enacted by the voters, will violate the constitutional protection against any "law impairing the obligation of contracts," as provided in Article 1, section 10, of the United States Constitution and Article 2, section 17, of the Arkansas Constitution. This challenge to the proposal is a question of substantive constitutional law that is not yet ripe for review. As we said in *Donovan v. Priest, supra,* we will not entertain substantive constitutional challenges to a proposed measure before an election is held:

> Based on the aforementioned decisions of this court as well as other courts, we hold that our review of the sufficiency of a proposed measure, as provided for in Amendment 7, includes a review of whether the measure's proponents are entitled to invoke

the direct initiative process when such issue is properly presented. In so holding, we do not conclude that we will entertain substantive constitutional challenges to a proposed measure, such as whether it violates the free speech provision of the First Amendment, before an election has been held. *We distinguish such substantive constitutional challenges from procedural challenges in that the former necessarily involve fact-specific issues and thus are not ripe for review until the proposed measure becomes law and a case in controversy arises.*

*Id.*, 326 Ark. at 360, 931 S.W.2d at 122. (Emphasis added.)

Here, we are not asked to determine whether a proposed amendment directly contravenes the amendment *process* provided in Article V of the United States Constitution, as we were asked to do in *Donovan v. Priest, supra*; nor are we asked to determine whether a proposed local initiative contravenes Amendment 7's provision that "no local legislation shall be enacted contrary to the Constitution or any general law of the State," as we were asked to do in *Stilley v. Henson, supra.* The complainant's constitutional challenge in this original action is substantive and necessarily requires this court to resolve the following fact-specific issues that arise in an impairment-of-contract claim:

- whether the proposed amendment will, in fact, operate as a substantial impairment of a contractual relationship;

- whether there is a sufficient and legitimate public purpose behind the proposed amendment; and

- whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the amendment's adoption.

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 410-13 (1983). These fact-specific issues are clearly not ripe for review. We should therefore decline to conduct a preelection review of this proposed amendment's constitutional validity.

For these reasons, I respectfully dissent.

SMITH, J., joins in this dissent.

BROWN, J., joins in this dissent with respect to Point II.

LAVENSKI R. SMITH, Justice, dissenting. I join the dissent of Justice IMBER. The majority and concurring opinions state several sound, persuasive reasons for the people not to vote for

proposed amendment 4. However, I am unconvinced that either states one compelling reason under our precedents for the people not to be able to vote on the amendment. As the majority points out, the amendment would make substantial changes in the operation of Arkansas's government. But it does not hide nor misstate those changes. They are evident in the extensive ballot title and in the amendment's text. A reader of average intelligence can readily discern that amendment 4 does much more than eliminate sales tax on used cars and other used goods. The discretion to accept or reject these changes should lie with the people and not with this court.

Dissent.