Mr. Kerry M. Hicks, Chairman Campaign for Comprehensive Legal Reform 568 Polk 59 Mena, Arkansas 71953-8232
Dear Mr. Hicks:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted a similar measure, which I rejected due to ambiguities in the text of your proposed amendment. See Op. Att'y Gen. 2008-056. You have made changes to your measure and submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
Popular Name
The 2008 Natural Gas Severance Tax Initiative
Ballot Title
AN ACT TO LEVY A SEVERANCE TAX OF SEVEN (7) PERCENT ON THE SEVERANCE OF NATURAL GAS IN THE STATE, MANDATING THE APPROPRIATION BY THE LEGISLATURE OF TWENTY EIGHT (28) PERCENT OF THESE TAX REVENUES TO THE ARKANSAS DEPARTMENT OF HUMAN SERVICES FOR CHILD WELFARE PROGRAMS AND SERVICES, DRUG/ALCOHOL ABUSE AND MENTAL HEALTH TREATMENT, AND THE PURCHASE, REPAIR, OR CONSTRUXCTION [SIC] OF FACILITIES; MANDATING APPROPRIATION OF SEVEN (7) PERCENT FOR AID TO FINANCIALLY STRESSED SCHOOL DISTRICTS; MANDATING APPROPRIATION OF SIXTY FIVE (65) PERCENT FOR REPAIR OR CONSTRUCTION OF STREETS, ROADS, AND BRIDGES IN THE STATE; AND REPEALING ALL STATUTORY PROVISIONS INCONSISTENT WITH THIS ACT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects my view of the merits of the proposal. This Office has been given no authority to consider the merits of any measure. In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); and Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed act, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title may, in my view, be necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
1. Section (a) of your measure provides as follows: "Effective January 1, 2009, there is hereby levied a tax on the severance of natural gas in the state in the amount of seven (7) percent of the market value of the gas at the time and point of severance, which shall be collected by the Director of the Department of Finance and Administration in the same manner as the present severance tax on natural gas. . . ." I am uncertain as an initial matter, how this tax relates to existing severance taxes levied on natural gas. See, e.g., A.C.A. § 26-58-111(5) (Repl. 1997), as amended by Acts 4 and 5 of 2008 (1st Ex. Sess.). I noted a similar ambiguity in your last submission. See Op. Att'y Gen.2007-316 at 4-5. Your current measure, in subsection (e), contains a general "repealer" clause, which repeals "[a]ll statutory provisions which are inconsistent with the provisions of this Act. . . ." A question arises as to whether your current measure would be "inconsistent with," or merely in addition to, existing laws that levy severance taxes. This ambiguity is compounded by the relationship of your proposed measure to two recently-adopted Acts. In the recent First Extraordinary Session of 2008, The Arkansas General Assembly adopted Acts 4 and 5, which increased certain state severance taxes for various types of natural gas, up to a rate of 5%. Those Acts were signed by the Governor on April 2, 2008, but are not effective until January 1, 2009. See Acts 4 and 5, § 12. Your measure also contains a stated effective date of January 1, 2009. Questions will therefore arise as to the effect your measure will have on Acts 4 and 5, which will all be effective on the same date. I cannot certify a ballot title for your measure summarizing this important point for the voters without clarification of the ambiguity.
Section (b) of your measure provides that: "The revenue from this tax shall be considered special revenue and the Treasurer of State shall hold all revenue collected from this tax in a fund that shall be called "The 2008 Natural Gas Severance Tax Initiative Fund. . . ." An ambiguity arises as to whether these funds will be held in the State Treasury, or by the Treasurer of State in some other "cash fund" outside the State Treasury. I assume your intention is the former, but I cannot determine that from the language employed. Funds are sometimes designated for custody outside the State Treasury, and as I stated in Op. Att'y Gen.2007-289 "[t]he purpose of this segregation is typically to exclude the funds from the necessity of an appropriation." See, e.g., Arkansas Constitution, 5 § 29 and Gipson v. Ingram, 215 Ark. 812, 223 S.W.2d 595
(1949). I assume that is not the intention of your measure in this regard, in light of the fact that subsection (c) of your measure addresses and apparently requires an appropriation for the revenues in question. Again, however, I cannot be certain from the language employed. As I stated in Op. Att'y Gen. 2006-009 "[t]he status of the fund will determine the applicability of certain other provisions of state law, including appropriation requirements. As a consequence, it may give the voters serious ground for reflection. I cannot certify a ballot title on this point without clarification of the ambiguity. (Cf. Op. Att'y Gen. 2000-120) (declining to certify ballot title where measure did not indicate whether `trust fund' was created within the state treasury.)"
3. Section (c) of your measure provides that: "The appropriation of all revenue from this fund by the Legislature is hereby mandated by the people as follows: (1) Twenty-eight (28) percent shall be appropriated to the Arkansas Department of Human Services to supplement, not supplant current funding, for the development or expansion of child protective services, foster care services, parent/child reunification services, drug/alcohol abuse and mental health treatment, and the repair, purchase of construction of facilities; (2) Seven (7) percent shall be appropriated as crisis funding for financially stressed school districts in such manner as the Legislature deems appropriate; (3) Sixty five (65) percent shall be appropriated for the construction or repair of streets, roads, and bridges in the state." An ambiguity arises as to what types of "facilities" are encompassed within subsection (1) above. An additional ambiguity arises under subsection (3) regarding the construction of "streets, roads, and bridges. . . ." Your previous measure referred to "highway maintenance, repair, or construction." I am thus uncertain whether the expenditure of money under your current measure is restricted to local streets and roads, as opposed to state highways or interstates.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed act, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL, Attorney General *Page 1