2013 Ark. 71

**CITY OF FAYETTEVILLE, Appellant**

v.

**FAYETTEVILLE SCHOOL DISTRICT NO. 1, Appellee.**

No. 12–579.

Supreme Court of Arkansas.

Feb. 21, 2013.

Kit Williams, Fayetteville City Attorney, for appellant.

Rudy Moore, Jr.; and Friday, Eldredge & Clark, LLP, Fayetteville, by: R. Christopher Lawson, for appellee.

JOSEPHINE LINKER HART, Justice.

|₁The Washington County Circuit Court found that the Washington County tax collector improperly applied 1.45 mills of a voter-approved 2.75 ad valorem school-millage increase to the retirement of redevelopment-district bonds issued in 2005. We conclude that the circuit court did not err in making this finding and affirm.

In 2010, voters in the Fayetteville School District (School District) passed 2.75 new-debt-service mills that would, according to the ballot, "be a continuing debt service tax until the retirement of proposed bonds to be issued in the principal amount of $51,000,000" that were "for the purpose of erecting and equipping new school facilities, and making additions and improvements to existing facilities." The ballot further provided that the "surplus revenues produced each year by debt service millage may be used by the [School] District for other school purposes." In 2011, however, certificates issued by the Washington County assessor and Washington County tax collector resulted in 1.45

mills of that 2.75-mill ad valorem increase being applied to bonds issued to finance the Highway 71 East Square Redevelopment District No. 1 Project. The City of Fayetteville (City) had authorized by ordinance on March 15, 2005, issuance of those bonds.

The School District sought declaratory judgment and injunctive relief, asserting that the statute defining "total ad valorem rate," which is "the total millage rate of all state, county, city, school, or other property taxes levied on all taxable property within a redevelopment district in a year," Ark.Code Ann. § 14–168–301(18)(A) (Supp. 2011), had been amended to exclude any "[i]ncreases in the total millage rate occurring after the effective date of the creation of the redevelopment district if the additional millage is pledged for repayment of a specific bond or note issue." Ark.Code Ann. § 14–168–301(18)(B)(i) (effective April 13, 2005). The parties filed cross-motions for summary judgment, and the circuit court found that the assessor's certification was incorrect and that the Washington County tax collector "improperly applie[d] to the [redevelopment district] the 1.45 mills of the 2.75 mills approved by the voters within the Fayetteville School District on September 21, 2010."

■ The City appeals and presents three arguments for reversal. This case is appropriately before this court as an appeal involving substantial questions of law concerning the construction and interpretation of an act of the General Assembly. Ark. Sup.Ct. R. 1–2(b)(6) (2012). As to the substantial questions of law presented here, our review is de novo. *Hobbs v. Jones,* 2012 Ark. 293, at 8, 412 S.W.3d 844, 850.

■ First, the City asserts that the circuit court's finding was "fully litigated" in another case, *City of Fayetteville v. Washington County,* 369 Ark. 455, 255 S.W.3d 844 (2007), and under the doctrine of res judicata, the circuit court could not allow relitigation. "Res judicata" precludes relitigation of a cause of action. *See, e.g., City of Marion v. City of W. Memphis,* 2012 Ark. 384, at 6, 423 S.W.3d 594, 598. We disagree that the present cause of action is barred by the doctrine.

In *City of Fayetteville v. Washington County,* this court considered the effect of amendment 78 to the Arkansas Constitution, which authorized redevelopment projects, on the 25–mill rate mandated by amendment 74 for maintenance and operation of schools. Following that decision, the case was returned to the circuit court and a judgment was entered on June 4, 2007. The circuit court's judgment provided that the 25 mills could not be included in the "[t]otal ad valorem rate." The judgment further provided that the " '[t]otal ad valorem rate' shall include all other millage (not excluded above) in the annual Washington County Ordinance Levying County, Municipal and School District Taxes."

■ It is the court's latter finding that the City focuses its res judicata argument. The City asserts that the language constituted a finding that all future millages would be included in the total ad valorem rate. The present cause of action, however, asks whether the new millage rate for the School District should be included in the total ad valorem rate and is a cause of action distinctly different from that in *City of Fayetteville v. Washington County,* which considered the interplay between amendments 74 and 78. The previous case never considered how section 14–168–301(18)(B)(i) would apply to future millage increases. Moreover, the judgment entered by the circuit court did not contain any language addressing whether future millages should be excluded, or included, in the total ad valorem rate. Thus, the present cause of action is not barred by the doctrine of res judicata.

Second, relying on article 2, section 17 of the Arkansas Constitution, which provides in part that "[n]o ... law impairing the obligation of contracts shall ever be passed," the City asserts that section 14–168–301(18)(B)(i) unconstitutionally impairs the bond-purchase contract and financing of the redevelopment bonds, as the statute reduces the mills supporting the bonds. We cannot say, however, that the statute removed any portion of a tax that had been pledged to the redevelopment bonds. The 2.75–millage increase in 2010 had not yet been passed at the time the City's March 15, 2005 ordinance authorized issuance of the redevelopment bonds. Furthermore, the official statement for the redevelopment district warned investors that the redevelopment bonds assumed an available ad valorem rate of 3.16 mills, an amount that did not include the 2.75 mills, and that one of the risk factors to be considered was the enactment of legislation that restricted millages to be included in the applicable ad valorem rate. Thus, the statute did not impair the contract.

This case is distinguishable from *Kurrus v. Priest,* 342 Ark. 434, 29 S.W.3d 669 (2000), where a proposed constitutional amendment that eliminated a tax on used goods would have contractually impaired the City of Brinkley's sales-and-use tax bond secured by a pledge of sales-and use-taxes on all goods. This court observed that the "proposed measure abolishe[d] a portion of Arkansas's sales and use tax which can no longer be used, as the City of Brinkley covenanted, to secure and pay its debts." *Kurrus,* 342 Ark. at 447, 29 S.W.3d at 676. While the City of Brinkley's bond official statement included language that spoke "in terms of the people of the State or the General Assembly *defining transactions or granting exemptions* that might reduce tax revenues," the language did not indicate that "an entire source of the sales and use tax revenues might be abolished and no longer available to secure the bond indebtedness." *Id.* at 447, 29 S.W.3d at 676 (emphasis in the original). In contrast, the 2010 school-millage increase did not exist when the bonds were issued in 2005, and the official statement specifically anticipated that legislation might be enacted to restrict certain millages. Thus, the statute did not "abolish" a source of revenue for the bonds.

Third, the City urges that because the ballot for the 2.75 mills did not "expressly pledge" the new millage to a bond, it did not fall within the ambit of section 14–168–301(18)(B)(i), which excludes millages "if the additional millage is pledged for repayment of a specific bond or note issue." The ballot, however, specifically indicated that the 2.75 new-debt-service mills would be a continuing debt-service tax for the principal amount of $51,000,000 in bonds. Thus, the 2.75 mills is for the repayment of a specific bond issue. While the ballot further provided that the "surplus revenues produced each year by debt service millage may be used by the [School] District for other school purposes," this language on the discretionary use of surplus revenue did not undermine the provision that the mills were pledged for a specific bond. Moreover, section 14–168–301(18)(B)(i) does not negatively imply that surplus revenue from a millage pledged to a bond cannot be used for other purposes. Indeed, there is statutory authority providing that the "surplus ... may be pledged for ... any other school purpose." Ark.Code Ann. § 26–80–106 (Repl.2008).

Affirmed.