Mr. Oscar Stilley, Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution. I note that you have previously submitted ballot titles for similar measures. See Ops. Att'y Gen. Nos.2000-020; 99-261; 99-200; 1999-416; and 97-333. Your proposed popular name and ballot title are as follows:
 Popular Name AN AMENDMENT TO ABOLISH THE ARKANSAS STATE TAX UPON PERSONAL AND CORPORATE INCOMES, OR, ALTERNATIVELY, TO AUTHORIZE THE PHASE OUT OF THE ARKANSAS INCOME TAX
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION ABOLISHING THE STATE TAX ON PERSONAL AND CORPORATE INCOMES OR, ALTERNATIVELY, AUTHORIZING THE ARKANSAS GENERAL ASSEMBLY TO PHASE OUT THE TAXES ON PERSONAL AND CORPORATE INCOME; PROVIDING THAT IF THE STATE OF ARKANSAS FULLY OBEYS AND ENFORCES THE PROCEDURAL DUE PROCESS PROVISIONS SET FORTH IN THIS AMENDMENT, AND IN ANY IMPLEMENTING LEGISLATION, WHICH MUST BE MADE EFFECTIVE NO LATER THAN JULY 1, 2003, THE STATE MAY FOR THE TAXABLE YEAR 2003, AND ALL SUBSEQUENT YEARS, COLLECT INCOME TAXES IN AN AMOUNT NO GREATER THAN THAT WHICH, TOGETHER WITH STATE SALES AND USE TAX REVENUES, WILL GENERATE NET REVENUE EQUAL TO THE NET REVENUE FROM INCOME TAXES AND STATE SALES AND USE TAXES FOR THE YEAR 2002; PROVIDING THAT THE AMENDMENT DOES NOT LIMIT THE AMOUNT OF STATE SALES AND USE TAX THAT MAY BE COLLECTED IN ANY GIVEN YEAR; PROVIDING THAT THE AMENDMENT DOES NOT AUTHORIZE THE INCREASE OF ANY OF THE RATES ON THE STATE INCOME TAX ABOVE THOSE EXISTING ON THE EFFECTIVE DATE OF THIS AMENDMENT, REGARDLESS OF THE AMOUNT OF ACTUAL OR PROJECTED TAX COLLECTIONS IN ANY GIVEN YEAR; CONDITIONING THE OPTIONAL INCOME TAX PHASE-OUT ON THE REQUIREMENT THAT THE GENERAL ASSEMBLY PROTECT ALL ARKANSAS CITIZENS AND LAWFUL RESIDENTS FROM THE COLLECTION OF ANY DIRECT TAX BY LIEN, LEVY, OR OTHER DISTRAINT UPON THE WAGES, BANK ACCOUNTS, OR OTHER PROPERTY OF THE TAXPAYER, BY ANY GOVERNMENTAL AGENCY WHATEVER, WITHOUT THE CONSENT OF THE TAXPAYER OR AN ORDER OF A DULY CONSTITUTED COURT OF COMPETENT JURISDICTION, TAKEN AND ENTERED AFTER THE TAXPAYER HAS BEEN GIVEN NOTICE AND OPPORTUNITY TO DEFEND, WITH THE RIGHT TO JURY TRIAL AND ALL OTHER U.S. CONSTITUTIONAL GUARANTEES, 1) BY ENFORCED DIRECT LEGISLATIVE PROHIBITION, OR, 2) BY REPAYING THE CITIZEN THE MONEY TAKEN, OR THE REASONABLE VALUE OF THE PROPERTY TAKEN, WITHIN 30 DAYS OF NOTIFICATION OF AN OFFICER LEGISLATIVELY DESIGNATED FOR THAT PURPOSE, OR, 3) BY PAYMENT OF THREE TIMES THE WHOLE AMOUNT OF TAX SET FORTH IN THE PERTINENT LIEN, LEVY OR OTHER SUMMARY COLLECTION DOCUMENT, PRIOR TO ASSESSING OR COLLECTING ANY STATE INCOME TAX FOR THE YEAR IN WHICH THE LIEN OR LEVY WAS FILED OR EXECUTED; PROVIDING THAT LIABILITY FOR DAMAGES TO BE PAID BY THE STATE PURSUANT TO THIS AMENDMENT OR IMPLEMENTING LEGISLATION SHALL BE DEEMED A PENALTY FOR CAUSING OR FAILING TO PREVENT THE VIOLATION OF PROCEDURAL DUE PROCESS, AND SHALL NOT BE AFFECTED BY ANY LATER ADJUDICATION OF THE UNDERLYING TAX LIABILITY; PROVIDING THAT THE TERM "DIRECT TAXES" FOR PURPOSES OF THIS AMENDMENT MEANS TAXES UPON THE EARNING, PAYMENT, OR RECEIPT OF WAGES, SALARY, OR OTHER INCOME, AND TAXES UPON ESTATES, INHERITANCES, AND GIFTS; PROVIDING THAT IN CASE OF PHASE OUT OF THE INCOME TAX, ANY STATE INCOME TAX REVENUES NOT REQUIRED TO PROVIDE THE STATE OF ARKANSAS WITH ANNUAL REVENUES EQUAL TO THE STATE INCOME TAXES FOR THE TAXABLE YEAR 2002 COLLECTED IN THE FOLLOWING YEAR, PLUS THE NET REVENUE OF ARKANSAS STATE SALES AND USE TAXES FOR THE CALENDAR YEAR 2002 COLLECTED NO LATER THAN DECEMBER, 2003, SHALL AS SOON AS REASONABLY PRACTICABLE BE DIVIDED AMONG AND REFUNDED TO ALL PERSONAL AND CORPORATE INCOME TAX PAYERS IN THE STATE OF ARKANSAS, PRO RATA ACCORDING TO THEIR RESPECTIVE TAX PAYMENTS FOR THE YEAR WITH RESPECT TO WHICH THE REFUND IS BEING MADE; PROVIDING THAT THE GENERAL ASSEMBLY SHALL MAKE ANY AND ALL LAWS WHICH MAY BE NECESSARY FOR THE IMPLEMENTATION OF THESE TAX REFUNDS; PROVIDING THAT IN CASE OF PHASE OUT OF THE INCOME TAX, THAT AFTER THE LAST YEAR IN WHICH INCOME TAX IS NECESSARY TO SUPPLY THE STATE WITH NET REVENUE EQUAL TO THE NET REVENUE FROM INCOME TAXES AND STATE SALES AND USE TAXES FOR THE YEAR 2002, THE INCOME TAX SHALL BE FOREVER PROHIBITED UNLESS AND UNTIL REAUTHORIZED BY CONSTITUTIONAL AMENDMENT; PROVIDING THAT THE TERM" STATE SALES AND USE TAX" SHALL NOT INCLUDE SALES AND USE TAX EARMARKED EXCLUSIVELY FOR COUNTY AND MUNICIPAL GOVERNMENTS; PROVIDING THAT IF ANY PARTICULAR CLASS OF GOODS OR SERVICES IS EXEMPTED FROM SALES AND USE TAX, AFTER THE DATE OF THIS AMENDMENT, WHETHER BY THE GENERAL ASSEMBLY OR BY THE INITIATIVE PROCESS, THE PHASE OUT OF THE INCOME TAX SHALL BE CALCULATED AND IMPLEMENTED AS IF SUCH SALES AND USE TAX EXEMPTION HAD NOT BEEN GRANTED; PROVIDING THAT IF THE RATE OF THE STATE SALES AND USE TAX RATE IS REDUCED, THE PHASE-OUT OF THE INCOME TAX SHALL BE CALCULATED AND IMPLEMENTED AS IF THE RATE OF THE STATE SALES AND USE TAX HAD NOT BEEN REDUCED; PROVIDING THAT IF THE STATE SALES AND USE TAX RATE IS INCREASED, THE PHASEOUT SHALL BE CALCULATED INCLUDING THE ADDITIONAL REVENUE AS STATE SALES AND USE TAX REVENUES, UNLESS OTHERWISE SPECIFICALLY AUTHORIZED BY APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS VOTING ON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING THAT THE COLLECTION OF INCOME TAX WHILE FAILING TO COMPLY WITH THE PHASE-OUT REQUIREMENTS SET FORTH IN THIS AMENDMENT, OR ITS IMPLEMENTING LEGISLATION, SHALL CONSTITUTE AN ILLEGAL EXACTION; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT JANUARY 1, 2003, EXCEPT AS OTHERWISE PROVIDED; PROVIDING THAT THE GENERAL ASSEMBLY IS AUTHORIZED TO ENACT LEGISLATION DEEMED PROPER FOR THE ORDERLY IMPLEMENTATION OF THE PROVISIONS OF THIS AMENDMENT; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title due to ambiguities in the text
of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I recognize that I have previously approved a ballot title for a similar measure that you proposed. See Op. Att'y Gen. No. 2000-020. However, in the time period since I approved that ballot title, the Arkansas Supreme Court decided Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000). The court's opinion in that case contains language that gives rise to concerns about certain aspects of your measure. Because I must bring this issue to your attention, I will also note other concerns about the measure.
I refer to the following ambiguities:
 (1) Section 3(a) of your proposed measure, which addresses the "optional phase-out of income taxes," refers to three methods by which the State of Arkansas may protect citizens and residents from the collection of taxes in violation of their due process. The first is legislative prohibition. The ambiguity arises in the second and third methods, both of which involve repayment by the state of certain amounts. The problem is that these methods do not provide sufficient guidance for establishing the taxpayer's entitlement to such repayment. The second method (in Section 3(a)(2)) refers to repayment "within 30 days of notification of an officer legislatively designated for that purpose." This phrase (itself somewhat ambiguous, not indicating who is to give notice, and not stating clearly what "that purpose" is) may be an attempt to provide some guidance, but it is unclear whether the state will have opportunity to rebut the claim before the designated officer, or whether that designated officer's decision will be reviewable by a court. A procedure of this nature may create a separation of powers problem. The third method (in Section 3(a)(3)) provides for no required process of establishing entitlement to the payment. Perhaps it is envisioned that the General Assembly will fill out these procedural gaps, but your measure does not explicitly direct the General Assembly to do so. I note that although Section 5 generally empowers the General Assembly to act, that section also explicitly provides that the measure is to be self-executing.
 (2) Section 4 of your proposed measure contains references to "Section 2" in ways that indicate that the intended reference is to Section 3. This error must be corrected in order to avoid a meaningless or nonsensical reference.
 (3) Section 4(c) refers to "the last year in which income tax is necessary to supply the state with revenue equal to the net revenue from income taxes and state sales and use taxes for the year 2002[.]" It is unclear precisely what the word "necessary" means in this context. In particular, it is unclear whether this section intends to require that revenues equal to the state amount be available from other sources. If your proposed measure is not intended to impose such a requirement, there is a further problem, in that it fails to notify voters of the potential impact upon existing programs that are supported by revenues that will be lost. Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000).
 (4) Section 4(d) states in part: "If any particular class of goods or services is exempted from sales and use tax, after the date of this amendment . . ., the phase out of the income tax shall be calculated and implemented as if such sales and use tax exemption had not been granted." It is unclear exactly which calculation this statement refers to, and how the calculation will operate in conjunction with the other parts of the measure. Section 4(d) makes other references to the calculation of the phase out, taking into consideration reductions or increases in the tax rate. These statements are similarly ambiguous. It is unclear from the statements in this section whether the calculation is to be made on the basis of hypothetical collections, or whether, in fact, the exemptions will no longer be effective and taxes should actually be collected on goods and services that were previously exempt.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, ___ S.W.3d ___ (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General