Mr. Ben McGee c/o Liberty Chevrolet 1901 East Service Road West Memphis, AR 72301
Dear Mr. McGee:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 Popular Name AN AMENDMENT TO RESCUE THE STATE OF ARKANSAS FROM THE HORRORS OF INADEQUATE FUNDING BY THE SUBSTANTIAL REPEAL OF THE ANTI-LOTTERY PROVISION OF THE ARKANSAS CONSTITUTION
 Ballot Title AN AMENDMENT TO LEGALIZE AND TAX BINGO, A STATEWIDE LOTTERY AND GAMING CASINOS IN CERTAIN COUNTIES; GRANTING A LIMITED FRANCHISE AND THE ESTABLISHMENT OF A GAMING COMMISSION; A SEVERANCE REPEALING AND ENACTMENT CLAUSE
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title.
First, I must reject your proposed popular name because it does not rise to the standard that has been set forth by the Arkansas Supreme Court. The court has held that in order to survive a challenge, the popular name of a proposed measure "cannot contain catch phrases or slogans that tend to mislead or give partisan coloring to a proposal." Kurrus v. Priest,342 Ark. 434, 441, 29 S.W.3d 669 (2000). In my opinion, the use of the term "horrors" and of the phrase "rescue the state" in your proposed popular name gives it a clear partisan coloring that would prevent its ability to withstand a challenge. For this reason, I must reject it.
Second, I must reject your proposed ballot title, due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. One of the primary ambiguities of your proposed measure concerns the role of the General Assembly. It is unclear precisely what power the General Assembly is to have in connection with the regulation of the activities permitted by the measure. In particular, it is unclear whether the General Assembly, after appointing the Commission pursuant to Section V of the measure, would have any further control over the commission, or would have other authority independent of the Commission. It is unclear whether the General Assembly would have the power to engage in such activities as defining certain key terms that are not defined in the measure, formulating regulatory processes that are not set forth in the measure, and directing enforcement activities in connection with the permitted activities.
 2. Section II of your proposed measure permits the game of bingo to be conducted by a number of listed organizations. This section identifies these organizations as "recognized as qualified 501(C) or equivalent, and approved by the Internal Revenue Service as exempt from federal taxes for a period of five (5) years prior to application." It is unclear what the term "application," as used in this section, refers to. No process of application is mentioned elsewhere in the measure. As a result, it is unclear which organizations will fall within Section II (and will thus be permitted to conduct the game of bingo).
 3. Various sections of your proposed measure levy taxes or require the deposit of certain amounts into various public funds on the city, county, and state levels. However, no provision is made concerning the procedure for collecting these taxes, or for the deposit of the proceeds into the various funds. This deficiency is particularly pertinent, in light of Section VII, under which existing laws that may be inconsistent with the measure are declared not to apply. Moreover, certain key terms related to this taxation (such as "adjusted gross win") are not defined.
 4. There are various ambiguities that appear in connection with the Gaming Commission that is authorized by Section V of your proposed measure. First, the composition of the Commission is unclear. In particular, it is unclear how many members the commission is to have, and whether one person could meet the requirement of" African descent, Spanish descent, and female gender." Indeed, it is unclear whether the Commission could be comprised in its entirety of one person possessing all of these characteristics. Second, it is unclear precisely what the authority of the commission is to be. One vague issue is how the Commission's "enforcement" authority might affect the existing enforcement authority with regard to taxes. Moreover, because the proposed measure is declared in Section VIII to go into effect as of the date of its approval, it is unclear who would exercise enforcement authority between the date of approval and such time as the commission is established and appointed pursuant to Section V. As mentioned previously, another vague issue is the authority of the General Assembly vis-à-vis the Commission. Although the General Assembly is authorized to appoint the Commission, it is unclear whether the General Assembly would have any continuing authority over the Commission or over the regulation of gaming generally, including the power to clarify some of the terminology and other issues that may not be fully addressed in the proposed measure. Moreover, the Commission is granted "full administration state wide following the expiration of the five year exclusive franchise." This statement leaves unclear the question of whether the Commission has authority — exclusive or otherwise — during the franchise period.
 5. Because your proposed measure grants an initial five-year exclusive franchise, it is unclear precisely what gaming activities are to be permitted after the expiration of that initial franchise period.
 6. The severability clause of Section VI is unclear. In particular, the Section provides that if a provision is held invalid as applied to particular persons or circumstances, it is not to be deemed invalid as to other persons or circumstances, yet is deemed severable. It is unclear how such a severability scheme would operate.
The foregoing list of ambiguities is not intended to be exhaustive, and I urge you to consult your counsel in restructuring your proposed measure. My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh