Ms. Teresa Belew Post Office Box 23291 Little Rock, Arkansas 72221-3291
Dear Ms. Belew:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2007), of the popular name and ballot title for a proposed initiated act. Your popular name and ballot title are as follows:
 Popular Name AN ACT TO LEVY A DESIGNATED WHOLESALE EXCISE TAX OF $.10 (ONE DIME) PER STANDARD DRINK ON ALL ALCOHOLIC BEVERAGES SOLD IN ARKANSAS TO FUND SUBSTANCE ABUSE PREVENTION, SUBSTANCE ABUSE TREATMENT AND LAW ENFORCEMENT INTERDICTION PROGRAMS AND TO ESTABLISH THE "ARKANSAS SUBSTANCE ABUSE PROGRAMS FUND" Ballot Title AN INITIATED ACT TO LEVY A $.10 (ONE DIME) PER STANDARD DRINK ADDITIONAL WHOLESALE EXCISE TAX ON ALL BEER, MALT BEVERAGE, WINE AND SPIRITUOUS LIQUOR SOLD IN ARKANSAS AS A SPECIAL AND DESIGNATED REVENUE FOR SUBSTANCE ABUSE PREVENTION, SUBSTANCE ABUSE TREATMENT AND LAW ENFORCEMENT. ESTABLISHING A FUNDING SOURCE TO BE KNOWN AS THE "ARKANSAS SUBSTANCE ABUSE PROGRAMS FUND;" THE FUND SHALL BE ADMINISTERED THROUGH THE OFFICE OF ALCOHOL AND DRUG ABUSE *Page 2 
PREVENTION SUBJECT TO THE APPROVAL OF THE ARKANSAS ALCOHOL AND DRUG ABUSE COORDINATING COUNCIL TO PROVIDE SUBSTANCE ABUSE PREVENTION, SUBSTANCE ABUSE TREATMENT AND LAW ENFORCEMENT INTERDICTION PROGRAM FUNDING. THE ALLOCATION OF MONEYS WILL BE AS FOLLOWS: FIFTEEN PERCENT (15%) FOR SCHOOL, COMMUNITY AND COALITION BASED SUBSTANCE ABUSE PREVENTION PROGRAMS; TEN PERCENT (10%) FOR ADOLESCENT SUBSTANCE ABUSE TREATMENT SERVICES; THIRTY-EIGHT PERCENT (38%) FOR ADULT SUBSTANCE ABUSE TREATMENT AND POST-TREATMENT SERVICES; THIRTY-THREE PERCENT (33%) FOR LAW ENFORCEMENT INTERDICTION; TWO PERCENT (2%) FOR THE INFRASTRUCTURE OF THE OFFICE OF ALCOHOL AND DRUG ABUSE PREVENTION; TWO PERCENT (2%) FOR THE INFRASTRUCTURE OF THE ARKANSAS ALCOHOL AND DRUG ABUSE COORDINATING COUNCIL. [THERE IS TO BE CREATED ON THE BOOKS OF THE TREASURER OF STATE, THE AUDITOR OF STATE, AND THE CHIEF FISCAL OFFICER OF THE STATE A SPECIAL REVENUE FUND TO BE KNOWN AS THE "ARKANSAS SUBSTANCE ABUSE PROGRAMS FUND." ALL MONEYS COLLECTED SHALL BE DEPOSITED INTO THE STATE TREASURY TO THE CREDIT OF THE FUND AS SPECIAL REVENUES.][1]
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certificationnor rejection of a popular name and ballot title reflects my view ofthe merits of the proposal. This Office has been given no authorityto consider the merits of any measure. *Page 3 
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d, 669 (2000);Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119 (1996); andPlugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensurethat the popular name and ballot title honestly, intelligibly, andfairly set forth the purpose of the proposed amendment or act.See Arkansas Women's Political Caucus v. Riviere,283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v.McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot *Page 4 
title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring.Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law.Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial.Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed initiated act, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
The initiated act imposes a tax of ten cents ($0.10) per "standard drink" on sales of alcoholic beverages. The act defines a standard drink of wine to be five (5) fluid ounces and a standard drink of vinous liquor or light wine to be twelve (12) fluid ounces. The definition of "wine," on the one hand, and the definitions of "vinous liquor" and "light wine," on the other, are, in my opinion, overlapping to such an extent that the standard drink size of, and therefore the effective tax rate on, a great number of beverages would be uncertain. It is my view, in other words, that almost any beverage commonly referred to as "wine," and many other fermented beverages as well, will meet both the act's definition of "wine" and the act's definition of either "vinous liquor" or "light wine," creating confusion and ambiguity for the voter.
Because of its designation scheme, section 3-7-602 of the act creates ambiguities about the nature of four or more types of defined alcoholic beverages. The *Page 5 
definitions of four types of beverages are designated (a), (b), (c), and (d) under subsection (9) ("spirituous liquor"). This designation scheme suggests that the four types are subtypes of spirituous liquor, but it is my view that two of the four types are not spirituous liquors at all.
The act defines the term "distributor, manufacturer, or wholesale dealer" and levies a tax on sales by such persons. The act provides, however, that the tax must be paid by "the wholesaler and/or manufacturer of liquor, beer or wine distributor making the first sale. . . ." This language is ambiguous. It is unclear whether the words "beer or wine" are part of a prepositional phrase beginning with the words "of liquor," or whether the words modify the word "distributor." In addition, the use of different language in different sections of the act, presumably to refer to the same group of persons, needlessly adds ambiguity to the act.
The definition of the term "distributor, manufacturer, or wholesale dealer" includes a person who sells to a retailer or to another wholesaler, but the act apparently levies a tax only on sales to a "retailer," which word is not defined. The act also purports to levy the tax "on the first sale in the State. . . ." It is not entirely clear whether the tax would be due on the first sale in the State if the sale were made to a wholesaler.
The act purports to add a new A.C.A. § 20-13-811. A part ofAct 393 of 2009 has already been codified as that section.
The act refers to both an "Arkansas Substance Abuse Prevention and Treatment Fund" and an "Arkansas Substance Abuse Programs Fund." This inconsistent usage creates ambiguity and confusion.
The act gives the Arkansas Alcohol and Drug Abuse Coordinating Council a power of approval, but the nature and extent of that power are somewhat ambiguous. It appears likely that the intended power is of approval of expenditures of the tax proceeds by the Office of Alcohol and Drug Abuse Prevention, but the act's language can be read to refer to approval of the transfer of money to the fund.
Section 3-7-606(a) provides that the subchapter added by the act to the Arkansas Code is to be "administered in all respects and in accordance with the Arkansas Tax Procedure Act, § 26-18-101 et seq., unless otherwise provided." It is unclear *Page 6 
what the phrase "administered in all respects" means. It appears possible that the word "and" has been inadvertently added.
The act contains no subsection 3-7-607(b)(1)(D). The omission creates ambiguity.
Your initiated act contains section 3-7-605, addressing sales in border cities that have implemented the tax rate provided in A.C.A. § 26-52-303 (Supp. 2009). If the section means that the tax levied by your initiated act applies in such border cities, it creates ambiguity about whether the tax applies in a border city eligible to impose, but not imposing, the tax rate set forth in A.C.A. § 26-52-303.
While there are several other, more narrow, ambiguities in other areas of the act, the ambiguities referred to above are sufficiently serious to require me to reject your popular name and ballot title. I am unable to substitute language in a ballot title for your measure due to these ambiguities. Further, additional ambiguities may come to light on further review of any revisions of your proposal.
With respect to the popular name and ballot title themselves, I question whether the phrase "wholesale," used in both, is sufficient to inform voters at what stage of the distribution and sales process, and from whom, the tax will be collected.
I also question whether the phrase "standard drink," used without definition or explanation in both the popular name and the ballot title, is sufficient to inform voters of the true magnitude or cost of the tax. In this regard, I note my impression that some standard drink sizes are defined in the act to mean approximately what a voter might expect, and some are not. For example, a standard drink of beer is defined as 12 fluid ounces and a standard drink of spirituous liquor is defined as 1.5 fluid ounces. It is my understanding that beverages of those types are commonly served in drinks of those or similar sizes. By contrast, a standard drink of light wine or vinous liquor is defined as 12 fluid ounces and a standard drink of malt beverage is defined as eight fluid ounces. It is my impression that light wine and vinous liquor, and particularly the latter, are commonly served in portions significantly smaller than 12 ounces, and that malt beverage, or malt liquor, is commonly served in portions significantly larger than eight ounces, notwithstanding the fact that malt beverage contains more alcohol than beer. If my impressions in this regard are shared by the voters, a definition or explanation of the phrase "standard drink" might be a necessary part of the ballot title. *Page 7 
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed initiated act, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN MCDANIEL Attorney General
[1] Your submission expresses doubt about whether to include the bracketed language in the ballot title.