Sheffield Nelson, Esq. Jack Nelson Jones Jiles Gregory, P.A. One Cantrell Center
2800 Cantrell Road, Suite 500 Little Rock, Arkansas 72202
Dear Mr. Nelson:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed initiated act. You have previously submitted similar measures, one of which was rejected due to concerns over the ballot title language and possible ambiguities in the text of your proposed measure. See Op. Att'y Gen. No. 2008-011. On February 11, 2008, this office certified the popular name and revised and certified the ballot title for a similar measure, as evidenced by Op. Att'y Gen. No. 2008-027. You have since made changes to your measure and submitted a revised popular name and ballot title for my certification. Your popular name and ballot title are as follows:
 Popular Name THE NATURAL GAS SEVERANCE TAX ACT OF 2012 Ballot Title AN ACT PROPOSING THAT EFFECTIVE JANUARY 1, 2013, THE SEVERANCE TAX ON NATURAL GAS SEVERED FROM WITHIN THE STATE OF ARKANSAS BE INCREASED TO SEVEN PERCENT (7%) OF THE MARKET VALUE OF SUCH NATURAL GAS AT THE TIME SUCH NATURAL GAS IS SEVERED; PROVIDING THAT THE NEW SEVERANCE TAX *Page 2 
RATE WILL SUPERSEDE AND REPLACE THE OLD RATES WHICH WERE BASED ON FOUR CATEGORIES OF NATURAL GAS DEFINED IN ARKANSAS CODE § 26-58-101, ALL OF WHICH ARE REPEALED BY THIS ACT; PROVIDING THAT IT WILL ALSO PROVIDE THE SINGLE SEVERANCE TAX RATE OF SEVEN PERCENT (7%) OF MARKET VALUE, VERSUS VARIOUS SEVERANCE TAX RATES, AS PROVIDED FOR IN ARKANSAS CODE § 26-58-111, ALL OF WHICH ARE REPEALED BY THIS ACT; PROVIDING THAT ALL COST RECOVERY PERIODS FOR VARIOUS CATEGORIES OF NATURAL GAS DESCRIBED IN § 26-58-127 WILL BE REPEALED; PROVIDING THAT THIS INCREASE TO SEVEN PERCENT (7%) OF MARKET VALUE IS BEING PROPOSED TO BRING THE SEVERANCE TAX ON NATURAL GAS MORE IN LINE WITH THE SEVERANCE TAX RATES CHARGED IN THE SURROUNDING NATURAL-GAS-PRODUCING STATES OF TEXAS, OKLAHOMA AND LOUISIANA AND TO RAISE ADDITIONAL REVENUES TO BE USED IN ACCORDANCE WITH THE ARKANSAS HIGHWAY REVENUE DISTRIBUTION LAW § 27-70-201 FOR USE IN THE CONSTRUCTION AND REPAIR OF ARKANSAS HIGHWAYS AND ROADS; PROVIDING THAT ALL TAXES, PENALTIES AND COSTS COLLECTED ON NATURAL GAS BY THE DIRECTOR OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION SHALL BE TREATED AS DESCRIBED IN § 26-58-124, AND DEPOSITED WITH FIVE PERCENT (5%) OF THE TAX FUNDS DEPOSITED AS GENERAL REVENUES AND NINETY-FIVE (95%) OF THE TAX FUNDS CLASSIFIED AS SPECIAL REVENUES AND SHALL BE DISTRIBUTED AS SET FORTH IN THE ARKANSAS HIGHWAY REVENUE DISTRIBUTION LAW, WITH SEVENTY PERCENT (70%) GOING TO THE STATE HIGHWAY AND TRANSPORTATION FUND, FIFTEEN PERCENT (15%) TO THE COUNTY AID FUND AND FIFTEEN PERCENT (15%) TO THE MUNICIPAL AID FUND; PROVIDING THAT THE ACT SHALL BE EFFECTIVE ON JANUARY 1, 2013; PROVIDING THAT THE GENERAL ASSEMBLY SHALL ADOPT AND ENACT ANY *Page 3 
AND ALL LAWS NECESSARY TO CARRY OUT THE INTENT OF THE ACT; PROVIDING THAT ANY AND ALL LAWS OR PARTS THEREOF, IN CONFLICT WITH THIS ACT ARE REPEALED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certificationnor rejection of a popular name and ballot title reflects my view ofthe merits of the proposal. This Office has been given no authorityto consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, 29 S.W.3d 669 (2000);Donovan v. Priest, 326 Ark. 353, 931 S.W.2d (1996); andPlugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensurethat the popular name and ballot title honestly, intelligibly, andfairly set forth the purpose of the proposed amendment or act.See Arkansas Women's Political Caucus v. Riviere,282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, *Page 4 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v.McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring.Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law.Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial.Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b). *Page 5 
I refer to an ambiguity regarding the formula to be used for the distribution of severance-tax revenues. Section 6 of your measure provides as follows:
 Revenues raised are to be used in accordance with the Arkansas Highway Distribution Law, Section 27-70-201 [et seq.] for use in the construction and repair of Arkansas highways and roads.
Section 7 provides:
 All taxes, penalties and costs collected on natural gas by the Director of the Department of Finance and Administration shall be treated as described in Section 26-58-124, and deposited with five percent (5%) of the tax funds deposited as general revenues and ninety-five percent (95%) of the tax funds classified as special revenues and shall be distributed as set forth in the Arkansas Highway Distribution Law, with seventy percent (70%) going to the State Highway and Transportation Fund, fifteen percent (15%) to the County Aid Fund and fifteen percent (15%) to the Municipal Aid Fund.
Your 5%/95% distribution tracks the provisions of A.C.A. § 26-58-124(c) (Supp. 2009), which provides:
 All taxes, penalties, and costs collected by the director on natural gas shall be deposited into the State Treasury as follows:
 (1) Five percent (5%) of the funds shall be deposited as general revenues; and
 (2) Ninety-five percent (95%) of the funds shall be classified as special revenues and shall be distributed as set forth in the Arkansas Highway Revenue Distribution Law, § 27-70-201 et seq. *Page 6 
Your suggestion that 95% of severance-tax revenues raised "are to be used in accordance with the Arkansas Highway Distribution Law" would trigger application of A.C.A. § 27-70-206 (Repl. 2010), which provides:
 All highway revenues which are available for distribution during each fiscal year shall be transferred to the following State Treasury funds, and in the order specified, with transfers to be made monthly until all available revenues have been transferred:
 (1) First, three percent (3%) of the amount thereof to the Constitutional Officers Fund and the State Central Services Fund, there to be used for the purposes specified for the fund by the Revenue Stabilization Law of Arkansas, § 19-5-101 et seq.;
 (2) Next, to the Gasoline Tax Refund Fund, such amount as the Director of the Department of Finance and Administration shall, from time to time, certify to the Treasurer of State as being necessary to pay approved gasoline tax refund claims under the provisions of §§ 26-55-301 — 26-55-321 and 26-55-401 — 26-55-408, or other applicable law. However, the aggregate total amount of all transfers under this paragraph shall not exceed two million five hundred thousand dollars ($2,500,000) during any fiscal year.
 (3) After meeting the requirements set out in the foregoing subdivisions, all remaining highway revenues which are available for distribution during each fiscal year shall be transferred in the following manner: Fifteen percent (15%) of the amount thereof, to the County Aid Fund; Fifteen percent (15%) of the amount thereof, to the Municipal Aid Fund; and seventy percent (70%) of the amount thereof, to the State Highway and Transportation Department Fund.
(Emphasis added.) *Page 7 
Under this statutory scheme, then, tax revenues would be apportioned 3% to finance two state funds, an unspecified percentage up to $2.5 million to defray tax-refund claims, and the remainder apportioned 70% for highway purposes, 15% for the Municipal Aid Fund and 15% for the County Aid Fund. The ambiguity in your proposed measure arises from the fact that you fail to acknowledge the 3% and the unspecified percentage expenditures that come off the top of revenues under the Arkansas Highway Distribution Law. Instead, you suggest that the 70%/15%/15% distribution will account for all severance-tax expenditures beyond the 5% devoted to "general revenues" under Section 7 of your proposed measure. Stated differently, Section 7 of your proposed measure is inconsistent with the Arkansas Highway Distribution Law, despite the fact that your measure represents that it intends to follow this law.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed *Page 8 
measure and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:JHD/cyh