Mr. Jimmy White, Spokesperson Sportsmen2010 Post Office Box 1346 Manila, Arkansas 72442
Dear Mr. White:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2007), of the following popular name and ballot title for a proposed constitutional amendment, as follows:
 Popular Name A PROPOSED CONSTITUTIONAL AMENDMENT TO AMENDMENT 35 TO REQUIRE THE MEMBERS OF THE ARKANSAS GAME AND FISH COMMISSION TO BE ELECTED RATHER THAN APPOINTMENT BY THE GOVERNOR
 Ballot Title TO AMEND THE ARKASNAS [SIC] CONSTITUTION CONCERNING THE MEMBERSHIP OF THE ARKANSAS STATE GAME AND FISH COMMISSION; PROVIDING THAT THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL CONSIST OF TWO (2) MEMBERS FROM EACH CONGRESSIONAL DISTRICT, TO BE CHOSEN BY THE QULIFIED [SIC] ELECTORS OF THE CONGRESSIONAL DISTRICT; PROVIDING THAT EACH MEMBER OF THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL BE A CITIZEN OF THE UNITED STATES AT THE TIME OF HIS OR HER ELECTION, A RESIDENT OF THE STATE OF ARKANSAS FOR TWO (2) YEARS PRECEDING HIS OR HER *Page 2 
ELECTION, A RESIDENT OF THE CONGRESSIONAL DISTRICT FROM WHICH HE OR SHE MAY BE ELECTED FOR ONE (1) YEAR PRECEDING HIS OR HER ELECTION, AND AT LEAST TWENTY-ONE (21) YEARS OF AGE AT THE TIME OF HIS OR HER ELECTION; PROVIDING THAT THE MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL DIVIDE THEMSELVES INTO TWO (2) CLASSES BY LOT AT THE FIRST COMMISSION MEETING FOLLOWING THE PASSAGE OF THIS AMENDMENT, WITH THE FIRST CLASS SERVING INITIAL TERMS OF TWO (2) YEARS AND THE SECOND CLASS SERVING INITIAL TERMS OF FOUR (4) YEARS; PROVIDING THAT ALL SUBSEQUENT TERMS OF MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL BE FOR FOUR (4) YEARS; PROVIDING THAT IF REDISTRICTING OF THE CONGRESSIONAL DISTRICTS OCCURS AND A MEMBER NO LONGER RESIDES IN THE DISTRICT THAT HE OR SHE WAS ELECTED TO REPRESENT, THE MEMBER SHALL REMAIN ON THE ARKANSAS STATE GAME AND FISH COMMISSION UNTIL HIS OR HER TERM EXPIRES; PROVIDING THAT EACH MEMBER OF THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL BE SWORN INTO OFFICE ON THE SECOND MONDAY IN JANUARY FOLLOWING A GENERAL ELECTION; PROVIDING THAT EACH MEMBER OF THE ARKANSAS STATE GAME AND FISH COMMISSION SHALL RECEIVE AN ANNUAL SALARY EQUAL TO THE ANNUAL SALARY FOR A MEMBER OF THE GENERAL ASSEMBLY AND REPEALING LANGUAGE REQUIRING MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION TO SERVE WITHOUT COMPENSATION OTHER THAN ACTUAL EXPENSE REIMBURSEMENT; REPEALING SECTION 5 OF THE REMOVAL [SIC] OF MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION; PROVIDING THAT SECTION 6 OF THE AMENDMENT 35 TO THE ARKANSAS CONSTITUTION, CONCERNING THE FILLING OF VACANCIES ON THE ARKANSAS STATE GAME AND FISH *Page 3 
COMMISSION DUE TO RESIGNATION OR DEATH, SHALL EXPIRE ON JANUARY 12, 2015, UPON THE SWEARING IN OF THE COMMISSIONERS ELECTED AFTER PASSAGE OF THIS AMENDMENT; PROVIDING THAT THE INITIAL ELECTION OF THE MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION UNDER THIS AMENDMENT SHALL OCCUR AT THE 2014 GENERAL ELECTION; PROVIDING THAT MEMBERS SERVING ON THE ARKANSAS STATE GAME AND FISH COMMISSION ON DECEMBER 31, 2014, SHALL REMAIN ON THE COMMISSION WITH THE SAME POWERS AND DUTIES UNTIL NEW MEMBERS CAN BE ELECTED AND SWORN INTO OFFICE ACCORDING TO THIS AMENDMENT AND THAT ANY VACANCIES OCCURING [SIC] AFTER THE SWEARING IN OF COMMISSIONERS ELECTED UNDER THIS AMENDMENT SHALL BE FILLED ACCORDING TO THE PROVISION IN AMENDMENT 29 TO THE ARKANSAS CONSTITUTION; AND PROVIDING THAT THIS AMENDMENT SHALL BECOME EFFECTIVE ON JANUARY 1, 2013.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certificationnor rejection of a popular name and ballot title reflects my view ofthe merits of the proposal. This Office has been given no authorityto consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law."Kurrus v. Priest, 342 Ark. 434, *Page 4 29 S.W.3d 669 (2000); Donovan v. Priest,326 Ark. 353, 931 S.W.2d (1996); Plugge v. McCuen,310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensurethat the popular name and ballot title honestly, intelligibly, andfairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere,282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v.Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen,318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v.McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald,192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen,supra. The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged *Page 5 
with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial.Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citingLeigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure.[1] A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2 of your proposed measure amends existing Section 2 of Amendment 35, which is entitled "Qualifications and appointment of members — Terms of office of first commission." Several ambiguities arise from this section. First, your proposal removes the existing language requiring Commissioners to be appointed by the Governor and establishing initial terms of office.[2] But it retains the existing title. The resulting discrepancy between the title and the text of your proposed amendment leads to uncertainty and must be remedied before I can certify a ballot title for your measure. Second, an ambiguity arises from the requirement that *Page 6 
each Commissioner be a resident of the State "for two (2) years preceding" the election, and a resident of the congressional district "for one (1) year preceding" the election. It is unclear from this language whether the person must be a resident for the respective period of time immediately before the election, or whether the requirement is met so long as the person was a resident for the requisite period at some point prior to the election. Compare
Ark. Const. art. 3, § 1 (addressing qualifications to vote and requiring residency for the stated period of time "next preceding any election"); Ark. Const. art. 5, § 4 (requiring State legislators to be residents of the State and county or district for the stated period "next preceding his election.")[3]
 2. Section 3 of your proposal amends existing Section 3 of Amendment 35 to remove the current language regarding terms of office, which provides in part that "[n]o Commissioner can serve more than one term and none can succeed himself"[4] Your proposal then staggers the initial terms of Commissioners, with some serving two-year terms and some four-year terms. Thereafter, each Commissioner "shall serve a term of four (4) years." A number of ambiguities arise from these amendments.
 • It is unclear from the repeal of the "one term" limitation and the sole reference to "a term of four (4) years" whether Commissioners are limited to one term under your proposed amendment. Section 3(a) of your proposed measure refers to Commissioners serving an "initial term" after the initial staggering of terms, perhaps implying that they can serve subsequent terms. On the other hand, the "initial term" language may simply be in recognition of the fact that all subsequent terms will be four (4) years, per Section 3(b). In any event, the matter of term limitations will likely be *Page 7 
significant in the mind of the voter, but cannot be summarized in a ballot title unless the text is clarified.
 • It is also unclear whether they can succeed themselves, either after an initial term, i.e., following the first election, or after filling a vacancy. Currently, under Section 6 of Amendment 35, the Governor fills vacancies on the Commission; and Section 3 prohibits Commissioners from succeeding themselves. Under your proposed amendment, the existing Section 6 expires January 12, 2015; and the existing Section 3 language-including the prohibition against succeeding oneself-is removed. Additionally, Section 8 of your proposal states that "[a]ny vacancies occurring on the Commission . . . shall be filled according to the provision in Amendment 29 to the Arkansas Constitution." (Emphasis added). It is unclear what "provision" this refers to. Section 1 of Amendment 29 authorizes the Governor to fill vacancies in a number of offices, including certain elective state offices. Section 2 of Amendment 29, makes persons appointed under Section 1 ineligible to succeed themselves. I cannot determine from the language of your proposed measure whether Amendment 29's succession prohibition is included under your measure, particularly given the proposed repeal of the existing Section 3 of Amendment 35 (and its prohibition against succeeding oneself).
 • The provision for staggered terms is also ambiguous. Section 3(a)(1) of your proposal states that the Commissioners who are first elected "shall divide themselves into two (2) classes by lot." It is unclear from this language whether the two Commissioners from each congressional district are to be divided by lot, so that there is staggering within each district, or whether the division is by lot among all the Commissioners as one pool. If the latter, then a given congressional district may have both of its Commissioners elected at the same time, while another district may have Commissioners with *Page 8 
staggered terms. If the division is to be by lot among all the Commissioners as one pool, the language of your proposal is ambiguous in failing to indicate whether the two classes are to be equal in number.
 3. Section 3(c) of your proposed amendment states that if a Commissioner no longer resides in a district as a result of redistricting, the Commissioner "shall remain on the Commission until his or her term expires." This suggests that residence in the congressional district is a continuing requirement. But what if a Commissioner simply moves out of the district, where no redistricting is involved? Would the Commissioner be ineligible at that point? Article 19, Section 4 of the Arkansas Constitution states that "[a]ll civil officers for the State at large shall reside within the State, and all district, county and township officers within their respective districts, counties and townships. . . ." I am uncertain, however, whether this provision would apply to Commissioners who are elected from congressional districts under your proposal.
 4. Section 4 of your proposed measure amends existing Section 4 of Amendment 35 to add a subsection stating that "[e]ach Commissioner shall receive an annual salary equal to the annual salary for a member of the General Assembly, with the salary to be payable in equal monthly installments." This gives rise to two ambiguities. First, General Assembly salaries are governed by Amendment 70 to the Arkansas Constitution, Section 1 of which authorizes expense reimbursement and a per diem. I am uncertain whether your proposed amendment means there will be no expense reimbursement at all. Second, Section 2 of Amendment 70 provides for the adjustment of General Assembly salaries and Section 3 authorizes annual increases based on the Consumer Price Index. It is unclear whether your proposed amendment allows for these adjustments or increases. *Page 9 
 5. Section 5 of your proposal amends existing Section 5 of Amendment 35 to remove the current language[5] and replace it with a new subsection (a) that states: "A Commissioner may be removed consistent with Arkansas [sic] Article 15, Section 1 of the Arkansas Constitution." (Emphasis added).[6] This reference to Ark. Const. art. 15, § 1 is confusing and ambiguous. As an initial matter, I am uncertain what is meant by saying a Commissioner may be removed "consistent with" Article 15, Section 1. Article 15, Section 1 makes "[t]he Governor and all State officers, Judges of the Supreme and Circuit Courts, Chancellors and Prosecuting Attorneys . . . liable to impeachment for high crimes and misdemeanors, and gross misconduct in office[.]" (Emphasis added). Article 15, Section 2 gives the House of Representatives "the sole power of impeachment" and requires that all impeachments be "tried by the Senate." The statute implementing the impeachment provisions are found at A.C.A. § 21-12-201-209 (Repl. 2004). I am uncertain how your new proposed language affects these existing procedures. The words "consistent with" are ambiguous and lead to uncertainty regarding the applicable procedure. Additionally, as "State officers," members of the Game and Fish Commission are already subject to Article 15, Section 1. The purpose of the new Section 5(a) under your proposal is therefore unclear. The inclusion of this seemingly redundant provision may call into question the Commissioners' continued status as state officers, particularly given their election from congressional districts. Finally, while impeachment ordinarily is not the exclusive method to remove state officeholders, [7] Section 5(a) of your proposed amendment may *Page 10 
create some uncertainty whether impeachment is the exclusive procedure for removing a Commissioner under your measure.
 6. Section 6 of your measure amends existing Section 6 of Amendment 35 slightly by deleting the reference to "seven" members of the Commission from the provision regarding the annual election of a chairman.[8] Under your proposal, Section 6 will be in effective from January 1, 2014 (the amendment's effective date) until January 12, 2015 (Section 6's stated expiration date). This would appear to leave the Commission without a chairman after January 12, 2015, but I am uncertain whether that was the actual intent.
 7. Sections 7 and 8 of your proposed amendment add new language to Amendment 35. While it is unlikely that these provisions affect existing Sections 7 and 8 of Amendment 35, the absence of any reference to these existing sections may lead to confusion.
 8. Section 8 of your proposal states that "[a]ny vacancies occurring on the Commission . . . shall be filled according to the provision in Amendment 29 to the Arkansas Constitution." (Emphasis added). In addition to the ambiguity noted above under Paragraph 2 (regarding Amendment 29's prohibition against succeeding oneself), the highlighted language is ambiguous given the fact that Amendment 29 contains several provisions governing the filling of vacancies. Section 1 of Amendment 29 authorizes the Governor to fill vacancies in certain offices; Section 2 makes certain persons ineligible for appointment; Section 3 addresses violations; Section 4 governs the duration of the appointee's term (providing for an election in certain instances); and Section 5 addresses the nomination of candidates at any such election. I cannot determine which of these provisions applies as "the provision" under your measure's wording.
 9. Although there is no statement in your proposed measure to this effect, I assume that Commissioners are to be elected on a nonpartisan basis. It is *Page 11 
nevertheless difficult to summarize this point in a ballot title for your measure without some clarification regarding election procedures, including any authority in the General Assembly to enact laws establishing such procedures.
I cannot begin to certify a ballot title for your proposed amendment in the face of the ambiguities noted above. You must remedy these confusing and ambiguous points before I can perform my statutory duty.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law.See, e.g., Finn v. McCuen, supra. Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure."Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted *Page 12 
above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL
Attorney General
[1] I have highlighted several misspellings and an error in syntax ("repealing Section 5 of the removal of members") in your proposed ballot title. Please also note the discrepancy between the ballot title's "January 1, 2013" effective date and the "January 1, 2014" effective date contained in Section 9 of the amendment itself. This discrepancy must be corrected before I can certify a ballot title for the measure.
[2] Section 1 of your proposal amends existing Section 1 of Amendment 35 to provide for the election of two Commissioners from each congressional district.
[3] Although one might question whether "next preceding" means "immediately preceding," various jurisdictions have used the phrase "next preceding" as a term of art to denote a specified period immediately preceding an event at issue. See Op. Att'y Gen. 2007-063.
[4] Please note the typographical error in the text of your proposal regarding the word "none."
[5] The existing Section 5 of Amendment 35 provides that the Governor may remove a Commissioner "only for the same causes as apply to other Constitutional Officers," after a hearing and with right of appeal to the Arkansas Supreme Court.
[6] I assume that the insertion of the word "Arkansas" was inadvertent. Additionally, there is no need to designate a subsection (a) because there is no subsection (b).
[7] See Elana Cunningham Wills, Constitutional Crisis: Canthe Governor (or Other State Officeholder) Be Removed from Office ina Court Action after Being Convicted of a Felony, 50 Ark. L. Rev. 221 (1997) (discussing judicial removal of officeholders under various other provisions of the Arkansas Constitution that render officials ineligible to hold office, including Ark. Const. art. 5, § 9, which applies to one who has been convicted of an "infamous crime.")
[8] The word "chairman" is also deleted and then substituted, and it is unclear why the same term would be substituted.